UNITED STATES of America
v.
Jesus M. OLVERA.
Cr. No. 5805.

United States District Court
S. D. Texas, Corpus Christi Division.
Aug. 18, 1954.

Malcolm R. Wilkey, U. S. Atty., C. Anthony Feiloux, Jr., Asst. U. S. Atty., Houston, Tex., for plaintiff.

Tom S. Williams, Houston, Tex., for defendant.

ALLRED, District Judge.

Defendant was charged by indictment with failing and refusing to submit himself for assignment to civilian work, in lieu of induction into the armed forces, as a conscientious objector, as directed by his local draft board, in violation of 50 U.S.C.A.Appendix, § 462. A jury was waived and the case submitted to the

court on an agreed statement of facts, consisting of the record of the local Board. Defendant's contentions will be discussed as stated.

This is a Jehovah's Witness case. Defendant, now 22 years old, registered with the local board at San Diego, Texas, on December 12, 1949. In December 1950 he filled out his questionnaire and returned it to the board. His answer to the various questions claimed: that he was a minister of religion, regularly served as such and had been ordained on March 24, 1949; that he also did secular work, averaging 57 hours a week, as a delivery man and janitor at a drugstore, earning $25 a week. A longhand letter, signed by one Eduardo Garcia, accompanying the questionnaire, stated that he (Garcia) had known defendant for the past three years "as a minister of the Gospel * * * now in charge of a local congregation in Alice." Defendant also signed "Series XIV" of the questionnaire, claiming to be a conscientious objector.

At the same time defendant wrote the board a letter, asserting his claimed ministerial status but requesting the board to send him "the special form for Conscientious Objector." He filled out this form and transmitted it to the board with a long letter, dated December 25, 1950, as to his beliefs, activities as a representative of the Watchtower Society, assistant company servant in the Spanish unit of the Alice congregation of Jehovah's Witnesses, etc., stating that he had been "ordained" to do such work; that it was all ministerial work; that he preached from door to door and did secular work "part of the time" to keep up his work as a minister, which, he stated, "is my vocation."

On February 8, 1951, the local board denied defendant's claim for ministerial exemption and classified him 1–A–O for service for non-combatant military duty. He requested and was granted a personal appearance before the board. As a result the board reclassified him as 1–O, conscientious objector liable for civilian work contributing to the national health, safety, etc. Defendant appealed from the refusal to grant his claim of ministerial exemption. The appeal board denied this claim and reclassified defendant 1–O, conscientious objector, on August 7, 1952. Pursuant to an order from the local board, defendant reported for physical examination on September 19, 1952, was accepted and so notified on September 24, 1952.

On October 6, 1952, defendant filed with the board a letter dated September 29, 1952, requesting a reopening and reconsideration of his classification.[1] With the letter defendant filed: (1) letters written on the letterhead of the Watchtower Bible Tract Society, appointing defendant (a) a Bible study servant on May 17, 1949; (b) a school servant, March 7, 1950; (c) an assistant company servant June 16, 1950; (d) an accounts servant, September 10, 1952; and (e) a letter from the Watchtower Society, dated October 1, 1952, certifying that defendant was a duly ordained minister, engaged in preaching and teaching, etc.; that he had been ordained March 20, 1949; that he presently officiates as assistant presiding minister of the Spanish

---

1. "I desire to file new evidence of my ministry of religion, which I desire that you consider. I have been active as a field minister for five years, and was baptised March 27, 1949. Since then I have served as an active minister to the congregation of the Spanish Unit of Jehovah's witnesses, being appointed or ordained by the Watchtower Bible and Tract Society, 117 Adams Street, Brooklyn, New York. Further proof of this can be found in the photostatic copies of my appointment from the above mentioned religious organization. I spend approximately forty hours each week attending to my ministerial duties as a minister of Jehovah's witnesses. I am also enclosing affidavits as further proof of my ministry.

It is my request that you reopen my classification and upon consideration of the evidence that I am filing that you give me a 4D classification as a minister of religion. I also wish to appear before you in person and be given an opportunity to explain my position and the evidence that I am filing."

unit in Alice, etc.; (2) A letter dated September 28, 1952, signed by 18 members of the Alice, Texas, Spanish congregation of Jehovah's witnesses, certifying that defendant "is a minister of our congregation and regularly and *customerly* (sic) performs the duties of a minister of our religion, and we recognize him as a minister of our religion;" (3) A letter, dated October 1, 1952, signed by Jose M. Castillo, stating that he had known defendant as a minister of the Gospel, and that defendant had been assigned to serve the congregation of Jehovah's witnesses at Alice, Texas, by the Watchtower Bible and Tract Society; and (4) A letter, dated October 2, 1952, signed by M. G. Kelly, Jr., that he had known defendant 8 years, during which he had been an earnest student of the Bible; that defendant had been baptized in 1949, had since held various ministerial duties and was then Assistant Minister to the Alice Spanish unit of Jehovah's witnesses.

On October 17, 1952, in response to defendant's request for reconsideration, the Board notified him to appear October 22nd.[2] At that time "A full hearing was conducted, but no record was made of the testimony given at the hearing.[3] Defendant also says on brief: "The defendant testified that he was pursuing the ministry full-time by devoting 40 hours per week to the performance of his duties and that he also spent 40 hours per week doing secular work to support himself * * *." The government does not dispute this, but says, on brief, that defendant's verbal testimony was heard and documentary evidence considered. The stenographer's partial transcript deals only with the board's explanation of what duties defendant would have to perform as a conscientious objector and an effort to persuade him to select the type of work or the agency through which he would perform it; and defendant's assertion that he was not interested in any jobs other than the one he had because he was a preacher and wanted to continue to work for the Houston Natural Gas Corporation[4] and continue his preaching. Defendant also filed with the board a letter, dated October 21, 1952, presenting "full proof of my status as a minister of Jehovah God," reciting his ordination "by God," his authorization to preach and recognition as such by the Watchtower Society, his appointment as assistant minister to the Spanish unit, his keeping of the records and accounts, his instruction of the brethren in public speaking and oral presentation of the gospel, his conduct of Bible study, preaching on the streets and from house to house and that "following the apostolic example, I do secular work to sustain myself so as not to be a burden or put a stumbling block in the way of those to whom I preach. (Acts 18:3, 4)."

At the close of the hearing, the Board informed defendant that it was not mandatory on them to reopen his classification. They declined to do so and processed him for induction for civilian work as a conscientious objector. On April 15, 1953, it ordered him to report

2. The board's notice read: "Receipt is acknowledged of your request to meet and discuss your Selective Service status with the local board. You may appear before the local board at 7:30 P.M. o'clock on 22 October 1952. You may discuss your classification, point out the class, or classes, in which you think you should have been placed, and direct attention to any information in your file which you believe the local board has overlooked or given insufficient weight. You may also present such new information as you believe will assist in determining a proper classification. If you have such information to offer, it should be in writing; or, if you present it orally, you should have it summarized in writing so that it may become part of your file. Regulations permit the local board to impose such limitations on the time you may have for your appearance; therefore, you should plan your presentation, beforehand, making it brief and concise. The local board may, at its discretion, permit any person to appear before it with you, or on your behalf; but they may not permit you to be represented by an attorney or legal counsel."

3. From defendant's brief.

4. Evidently defendant had changed his secular employment at the drug store.

568

to the Austin State Hospital for such duties. Defendant failed and refused to submit himself and this prosecution followed.

Defendant's first proposition is that the local board's refusal to reopen his classification was arbitrary, capricious and an abuse of discretion, in violation of sections 1625.1, 1625.2 and 1625.4 of the Selective Service Regulation. Section 1625.2 reads:

"When Registrant's Classification May Be Reopened and Considered Anew.—The local board *may* reopen and consider anew the classification of a registrant (1) upon the written request of the registrant, * * * if such request is accompanied by written information presenting *facts not considered* when the registrant was classified, *which, if true, would justify a change in the registrant's classification* * * *" (Emphasis supplied).

A careful consideration of the record fails to disclose any substantial change in defendant's activities after his 1-O classification in July, 1952, and October, 1952, when he requested reconsideration and purportedly offered additional new evidence. His claim and the evidence in support of it is but a rehash of his original claim. The only real change is that originally he put in an average of 57 hours a week in secular employment (earning $25.00 a week) and an unspecified number of hours as a minister; whereas, in October, 1952, he put in 40 hours a week as a minister and 40 hours a week in secular work, at a rate of pay not shown. In both instances, oral testimony was taken. What it was the court does not know, but the unchallenged statements made in the brief, as to what the testimony was, will be accepted. The record shows that defendant put in half-time each week preaching and teaching the principles of his sect and half-time at his secular employment.

 "Preaching and teaching the principles of one's sect, if performed part-time or half-time, occasionally or ir-

regularly, are insufficient to bring a registrant under § 6(g). These activities must be regularly performed. They must, as the statute reads, comprise the registrant's 'vocation.' And since the ministerial exemption is a matter of legislative grace, *the selective service registrant bears the burden of clearly establishing a right to the exemption.*" Dickinson v. U. S., 346 U.S. 389, 395, 74 S.Ct. 152, 156, 98 L.Ed. 132. (Emphasis supplied.)

 Thus the information allegedly presenting facts not considered, even if true, would not have justified a change in defendant's classification under section 1625.2, supra. The local board, therefore, did not arbitrarily or capriciously refuse to re-open defendant's classification. Defendant cites a number of unreported decisions of the district courts holding that local boards erred in not re-opening classifications, thus denying the registrants a right to appeal. The facts in those cases are readily distinguishable.

Defendant next contends that the local board's order for him to report for forwarding to the Austin State Hospital to perform civilian work, and the selective service regulations, under which it was promulgated, are in conflict with the Universal Military Training Service Act, 50 U.S.C.A.Appendix, § 456(j), 65 Stat. 83. That section provides in part:

"* * * (2) if the objector is found to be conscientiously opposed to participation in such noncombatant service, he shall, in lieu of such induction be ordered by his local board, subject to such regulations as the President may prescribe, to perform for a period equal to the period prescribed in section 4(b) such civilian work contributing to the maintenance of the *national* health, safety, or interest as the local board may deem appropriate * * *." (Emphasis supplied.)

Section 1660.1 defines the type of employment which may be considered as civilian work contributing to the maintenance of the national health, safety or

interest, and appropriate to be performed in lieu of induction:

"(1) Employment by the United States government, or by a State, Territory, or possession of the United States, or by a political subdivision thereof, or by the District of Columbia.

"(2) Employment by a nonprofit organization, association, or corporation, which is primarily engaged either in a charitable activity conducted for the benefit of the general public or in carrying out a program for the improvement of the general health or welfare, including educational and scientific activities in support thereof, when such activity is not principally for the members of such organization, association, or corporation, or for increasing membership thereof."

Defendant contends that the Austin State Hospital, not being subject to, or a part of, or supervised by the National Government, does not contribute to the maintenance of the *national* health, safety or interest. I think a sufficient answer to this is that Congress authorized the President to prescribe regulations on the subject; and, since the regulations recognize and make findings that employment by the State, or employment by a proper nonprofit organization, contribute to the maintenance of the national public health or welfare; I see nothing unreasonable in such a finding or classification. Defendant's contention is overruled.

Defendant also contends that the act, as construed and applied by the regulations and the order, calls for a private non-federal labor draft for the performance of services not exceptional or related to the National Defense, in violation of the Thirteenth Amendment to the Constitution; and has deprived defendant of due process contrary to the Fifth Amendment. Defendant has filed a very exhaustive brief on the subject but none of the cases cited sustains such contentions. They likewise are overruled.

Defendant is adjudged guilty. Defendant is directed to appear before the court on Friday, September 3, 1954, at 9:30 o'clock a. m. The Clerk will notify counsel.