UNITED STATES of America, Plaintiff,

v.

Thomas Walter POMORSKI, Defendant.

No. 5810.

United States District Court
W. D. Michigan, S. D.
Sept. 9, 1954.

Wendell A. Miles, U. S. Atty., Grand Rapids, Mich., for plaintiff.

Irving Smith, Grand Rapids, Mich., for defendant.

KENT, District Judge.,

This is a criminal case arising out of an indictment returned, by the grand jury for the Western District of Michigan on the 2d day of June, 1954. The indictment charged that the defendant, Thomas Walter Pomorski, had failed and refused to report for civilian work contributing to the maintenance of the "national health, safety and interest," as required by the Selective Service Law, Rules and Regulations, and in violation of Section 456(j) and Section 462(a),

Title 50 of the Appendix to the United States Code Annotated. The defendant, in accordance with the provisions of Rule 23, the Federal Rules of Criminal Procedure, 18 U.S.C.A., waived trial by jury in writing, and the government and the court have consented to such waiver.

At the conclusion of all the proofs, the defendant made a motion to dismiss the action on the following grounds: First, that as evidenced by certain of the items in the Government's Exhibit A, the draft board was unduly influenced to classify the defendant-registrant 1-O, formerly 4-E, as a conscientious objector, rather than 4-D, as a minister, because of the fact that the defendant had not graduated from a theological school; and, according to a letter from the chairman of the draft board, because the registrant had not been ordained.

Counsel for the defendant claims in his motion that because of confusion in the minds of the members of the draft board as to the requirements to classify a registrant as a minister within the meaning of the Selective Service Laws, Rules and Regulations, the defendant had not been given a full, true and complete hearing, and cites to the court certain cases: Niznik v. U. S., 184 F.2d 972, and the same case in 173 F.2d 328. Counsel also cites Smith v. U. S., 4 Cir., 157 F.2d 176 and U. S. v. Zieber, 3 Cir., 161 F.2d 90. The Niznik case is a decision of the Sixth Circuit.

Counsel further claims that there were conversations between the registrant and members of the draft board which were not reduced to memorandum form and made a part of the defendant's file in writing, as required by Section 1624.2 of the regulations, and cites the same cases in support of that position.

The court is satisfied that its decision relative to the merits of the charges contained in the indictment against the defendant will satisfactorily represent its opinion as to the merits of the motion made by the defendant, since the questions raised by the motion must necessarily be determined in deciding the guilt or innocence of the defendant.

The Government's Exhibit A, consisting of this defendant's Selective Service file, pages 1 through 64, shows that the defendant returned his Selective Service System classification questionnaire on June 20, 1950. In that questionnaire, under Series 8, paragraph 5, he advised the Selective Service Board that he was employed as a radio repairman; that he worked an average of thirty hours per week. Subsequently, a special form for conscientious objectors was mailed to the respondent, which was returned to Local Board No. 63, Muskegon County, on October 11, 1950. At that time he reported to the board, under Series 3: "Employment: Janitor, Colonial, White Street, full time." It should be noted that in both the original questionnaire and in the conscientious objector questionnaire, defendant claimed that he was a minister. On October 12, 1950, he was classified 4-E, as a conscientious objector.

On June 26, 1952, it appears from the file that the case was re-opened, and the defendant was classified 1-O, which means the same as the previous 4-E, a conscientious objector. There were hearings subsequently.

It appears to the satisfaction of the court that the defendant was courteously received, that he was extended the right to hearing when requested, and appeal was taken. The classification was affirmed by the Appeal Board.

Neither the defendant nor his attorney make any claim that the defendant-registrant produced any information for the benefit of the draft board relative to his activities as a minister which would have or should have required Local Board No. 63, Muskegon County, or the Appeal Board to give the defendant a 4-D classification as a minister.

The court is satisfied that the language used by the chairman of the draft board at the hearing on July 31, 1952, relative to the necessity for attendance at a theological school, by one who claims exemption as a minister, is not controlling in this case, and did not control the classification awarded to this defendant by Local Board No. 63.

The testimony of the various witnesses, including the defendant, shows that at the time the defendant was given the 1–O classification, there was before the board, in addition to the facts disclosed by Exhibit A, a Selective Service System classification questionnaire, previously referred to, and a special form for conscientious objector, which was also previously referred to. The board was also informed and knew, as its records show, that the defendant was employed full time in secular employment.

The same reasoning applies to the other questions raised in defendant's motion to dismiss the government's charges against this defendant. Basically, the defendant claims in his motion, in his trial brief, in his argument, and in the evidence produced, that the defendant was a "minister" within the meaning of the Selective Service Law, Rules and Regulations.

■■ Exemption from military service is a matter of legislative grace and not a matter of right. No one has an inherent or constitutional right of exemption. The registrant must fit himself within the exemptions provided by Congress. This has been ruled on in the case of U. S. v. Schwimmer, 279 U.S. 644, 49 S.Ct. 448, 73 L.Ed. 889; U. S. v. Macintosh, 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302; and U. S. v. Brooks, 2 Cir., 147 F.2d 134.

The applicable statute, being Section 466, subdivision (g) paragraphs (1), (2) and (3), sets forth the definitions applicable to the situation before the court.

466(g)(1) reads:

"The term 'duly ordained minister of religion' means a person who has been ordained, in accordance with the ceremonial, ritual, or discipline of a church, religious sect, or organization established on the basis of a community of faith and belief, doctrines and practices of a religious character, to preach and to teach the doctrines of such church, sect, or organization and to administer the rites and ceremonies thereof in

public worship, and who as his regular and customary vocation preaches and teaches the principles of religion and administers the ordinances of public worship as embodied in the creed or principles of such church, sect, or organization."

Section 466(g)(2) of Title 50 of the Appendix to the United States Code Annotated, provides:

"The term 'regular minister of religion' means one who as his customary vocation preaches and teaches the principles of religion of a church, a religious sect, or organization of which he is a member, without having been formally ordained as a minister of religion, and who is recognized by such church, sect, or organization as a regular minister."

The court calls attention to the fact that the two paragraphs read make reference to "customary vocation" and to "regular and customary vocation".

Section 466(g)(3) of Title 50 of the Appendix to the United States Code Annotated, provides as follows:

"The term 'regular or duly ordained minister of religion' does not include a person who irregularly or incidentally preaches and teaches the principles of religion of a church, religious sect, or organization and does not include any person who may have been duly ordained a minister in accordance with the ceremonial, rite, or discipline of a church, religious sect or organization, but who does not regularly, as a vocation, teach and preach the principles of religion and administer the ordinances of public worship as embodied in the creed or principles of his church, sect, or organization."

■ This court is satisfied that under the law, the Muskegon County Draft Board No. 63 properly classified this defendant 1–O, as a conscientious objector.

This court is further satisfied that such classification was not made arbitrarily, but was based upon reason and

common sense, and upon the information given to the board by the registrant, as evidenced by Exhibit A, the registrant having stated to the local board that he was regularly employed, that he had a full-time job. The Selective Service System file does not show any affidavit that the defendant, as his regular vocation, was a minister. No ordination certificate from the Watchtower Bible and Tract Society, Inc., has been filed with the local draft board to substantiate any formal claim that the defendant is a minister. This defendant did not claim before the draft board, and does not now claim, that he was a minister by vocation.

It is the defendant's claim that because he, together with an apparent majority of the other members of the congregation of, which he was a member, takes part in certain activities of the sect, such as passing out literature on the street, calling on persons who are interested in becoming members of the congregation, holding Bible study meetings, accepting assignments in connection with meetings of the congregation, that it follows necessarily that he and all of the others who perform such work must be classified as "ministers" within the meaning of the rules and regulations of the religious organization of which he is a member; and the defendant further claims that such activities entitle him to a 4–D classification as a minister within the provisions of the Selective Service Law.

This theory this court cannot accept.

As stated by the Court of Appeals of the Seventh Circuit, in U. S. v. Simmons, 213 F.2d 901; 903:

"The court reviewing an order denying such a claim of privilege [ministerial status] may not weigh the evidence. The selective service file may be scrutinized only for the narrow purpose of determining whether any factual basis supports the classification, and in its scrutiny the reviewing court may not require adherence by the administrative body to the niceties of judicial rules

of evidence. When and if the court determines that the contested order rests on a basis in fact, its jurisdiction ends, even though the court be convinced that the order is erroneous."

And this court is not so convinced in this case.

Generally, for the law applicable to this situation, it is suggested that the following cases be examined: Dickinson v. U. S., 346 U.S. 389, 74 S.Ct. 152; Cox v. U. S., 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59; Eagles v. U. S. ex rel. Samuels, 329 U.S. 304, 67 S.Ct. 313, 91 L.Ed. 308; Eagles v. U. S. ex rel. Horowitz, 329 U.S. 317, 67 S.Ct. 320, 91 L.Ed. 318; and Gibson v. U. S., 329 U.S. 338, 67 S.Ct. 301, 91 L.Ed. 331.

Circuit Judge Lindley, in writing the Simmons opinion and its companion decision, U. S. v. Sicurella, 7 Cir., 213 F.2d 911, has reviewed the law relative to judicial review of Selective Service classification as applied to criminal cases.

This court is satisfied that the opinion of Judge Lindley has been very carefully thought out and is a correct interpretation of the cases heretofore and therein cited.

The court is satisfied, for the reasons hereinbefore given, that the classification 1–O was properly given to this defendant.

Defendant admits that he received an order to report to his local draft board for assignment to civilian work contributing to the national health, safety and interest at the Northville State Hospital, a Michigan State hospital for the mentally ill, located at Northville, Michigan. The defendant claims that any work at the Northville State Hospital would not contribute to the "national health, safety and interest" within the meaning of the applicable law.

Defendant further claims that to require him, as a conscientious objector, to report for such work would be contrary to the Fifth Amendment to the Constitution, as depriving him of his liberty without due process of law, on the ground

that the order requiring him to report was invalid and void because the work involved would not contribute to the national health, safety and interest. The defendant further claims that to require him to report in accordance with the order would be in violation of the Thirteenth Amendment to the Constitution of the United States, Section 1, in that it would constitute involuntary servitude.

The defendant's contentions relative to the constitutionality of the matters involved in this action have been previously decided adversely to the defendant in substance or in effect, as was stated by the Circuit Court of Appeals for the Sixth Circuit in Wolfe v. U. S., 149 F.2d 391, at page 393.

We are, therefore, left with the question of whether or not work at the Northville State Hospital would be work "contributing to the national health, safety and interest" within the meaning of the applicable law. In this connection, our attention is called to the case of Weightman v. U. S., 1 Cir., 142 F.2d 188, 191, and cases therein cited. Based upon this decision and the cases therein cited, which the court has examined, the Circuit Court of Appeals for the First Circuit announced, and I quote:

"Under the rule we have no doubt that Congress has the power under the Constitution to delegate the duty of determining what is and what is not 'work of national importance'. As a practical matter it could do nothing else. It would certainly be 'impracticable' for Congress itself to attempt to differentiate between all work which is, and all work which is not, of that nature."

In the principal case, Local Board No. 63 of Muskegon County asked the approval of the National Director of the Selective Service System of an order requiring this defendant, Thomas Walter Pomorski, to report for civilian work at the Northville State Hospital, in Northville, Michigan. The National Selective Service Director approved such an assignment and, apparently, both the director and the local board were satisfied that such work would contribute to the national health, safety and interest.

The testimony produced in this case shows that the Northville State Hospital is a hospital constructed and built pursuant to the laws of the State of Michigan, with money appropriated from the public treasury by the legislature of the State of Michigan; that included in the patient population is a varying number of veterans of wars of the United States. It appears to the satisfaction of the court that the Veterans Administration, a Federal agency, through a contractual arrangement with the State of Michigan, provides for payment for the care of veterans who have been committed to the institution because of mental illness, either service-connected or nonservice-connected, by payments made to the State of Michigan on such basis as has been or will hereafter be agreed upon.

To say that Local Board No. 63, Muskegon County, and the National Director of the Selective Service System, General Lewis B. Hershey, were arbitrary and capricious in determining that caring for the mentally ill in a state hospital would contribute to the national health, safety and interest does not fit this court's conception of the duties which the public owes to persons who are unable to care for themselves because of mental illness, whether such care is given through the state government, the Federal government, or even perhaps by the local government.

This court is satisfied that the Congress did not intend that the term "contributing to the national health, safety and interest" would require exclusive Federal control over any such organization or institution; rather, the law indicates substantially to the contrary. This court is satisfied that, by its previous actions in granting appropriations for the construction of local hospitals, of which the court takes judicial notice, and in other activities in conjunction with state and local governments, such as the school lunch program, the Federal government has recognized obligations which it cannot carry out or does not feel

that it is necessary for the Federal government to carry out, but to which it makes contributions in order to assist in maintaining the national health, safety and interest.

The care of the mentally ill is the responsibility of all of the people. Whether that care is given by local government, by state government, or by Federal government is not controlling. Care extended, regardless of the manner in which it is extended, necessarily contributes to the national health, safety and interest.

The Congress and the regulations have provided that a conscientious objector may not be assigned to work in an institution which may contribute to the national health, safety and interest but which is operated for private profit.

For the reasons herein outlined, this court is satisfied that the defendant's motion should be denied, and an order may be entered denying such motion; and the court is further satisfied that the defendant was and is guilty of the charges contained in the indictment heretofore filed in this cause. A verdict of guilty may be entered.