**UNITED STATES of America,**
**Plaintiff,**
v.
**Armand Fred HOEPKER, Defendant.**
**Crim. A. No. 18094.**

United States District Court
E. D. Illinois.
Sept. 29, 1954.

Clifford M. Raemer, U. S. Atty., Salem, Ill., and John Morton Jones, Asst. U. S. Atty., Danville, Ill., for the United States.

John F. Twomey, Danville, Ill., and Ben F. York, St. Louis, Mo., for defendant.

PLATT, District Judge.

Armand Fred Hoepker was indicted for refusing to report for civilian work as ordered by his draft board in violation of Section 462, Title 50 U.S.C.A. Appendix. He waived a jury trial in writing, with consent of the government and approval of this court. Rule 23(a) of Fed.Rules Crim.Proc. 18 U.S.C.A. He stipulated in writing he refused to report and the Selective Service System file be admitted in evidence.

Mr. Hoepker now maintains that he should be acquitted for the following reasons:

1. The local board and appeal board erred in failing to classify the defendant 4–D, in that there was no basis in fact for the denial of a ministerial exemption. There is no evidence to refute the prima facie claim to such ministerial exemption. Therefore, the action of the draft board and appeal board was arbitrary and capricious.

2. The draft board erred in refusing to decide on the record before it whether the defendant was entitled to a 4–D classification, and the appeal board erred in reviewing the record under these circumstances.

3. The draft and appeal board erred and acted capriciously, arbitrarily, and without basis in fact, in failing to decide specifically whether the defendant was entitled to a 4–D classification, and leaving this issue undecided throughout the course of the proceedings.

4. The order of the local board for the defendant to perform civilian work in a state hospital and Sections 1660.1 and 1660.20 of the Selective Service Regulations are in conflict with the Act, because the work is not national or federal work, as required by the Universal Military Training and Service Act, 50 U.S.C.A. Appendix, § 451 et seq.

5. The Act, as construed and applied by the regulations and the order, calls for a private non-federal labor draft for the performance of services that are not "exceptional" or related to the National Defense in violation of the Thirteenth Amendment to the Constitution of the United States.

Since the denial of the 4–D or ministerial classification must be based upon the evidence as shown by the Selective Service System file it is necessary to review the facts therein disclosed. Mr. Hoepker completed his first questionnaire in October, 1948. In it he stated that he was born August 25, 1928. He was a minister of religion and regularly served as a minister of Jehovah's Witnesses. He had been a minister since January 1, 1939, and was ordained April 19, 1939 by the Watchtower Bible and Tract Society. He was educated at the "Theocratic Ministry School," and was conscientiously opposed to war in any form. He was working on a farm as a hired hand at $50 per month for his employer, Philip Hoepker. A 4–D classification was requested. He enclosed with the questionnaire a printed card stating he was an ordained minister; 22 affidavits of persons describing his relationship with Jehovah's Witnesses, and 58 signatures to a statement he was a minister. He also added a statement of his own that he regularly averaged 65 hours per month in the ministry.

Mr. Hoepker completed his special questionnaire for conscientious objector in April, 1949. In this, he informed the board that he worked as a machine operator for John Deere Tractor Company in Waterloo, Iowa, from 1947 to 1948, and did farming for Philip Hoepker in Addieville, Illinois. He did not say when the job ended. April 26, 1949 the registrant was classified 4–E, which was practically the same as 1–O conscientious objector.

A physical examination was given Mr. Hoepker on January 9, 1951 and he was found acceptable for induction to the armed forces. The order of induction was postponed for the purposes of an appeal. Hoepker again claimed a ministerial classification.

February 2, 1951, at his request Hoepker appeared before the local board and the summary states the board told him that they could not judge whether he was a minister or not, and that he should appeal the case to the Department of Justice. February 15, 1951, the board again classified him 1–A.

A special hearing was given Mr. Hoepker before Honorable Jackson R. Hutton, Special Hearing Officer representing the Department of Justice, on January 11, 1952. His report was the registrant appeared sincere and was a bona fide minister of the Jehovah Witness sect. He recommended Hoepker be classified 4–E (Conscientious Objector). May 7, 1952 the appeal board classified Hoepker 1–O.

A special report for class 1–O registrants was sent Mr. Hoepker by the board. He returned it in blank, and wrote a letter stating he could not let secular work interfere with his ministerial work. He added that he had for support the secular job, which was to the public's interest. This was building homes. The board wrote Mr. Hoepker requesting he select one of the three types of civilian work of national importance which were described to him.

Hoepker replied he would not submit to any type of civilian work. He met with the board to discuss civilian work assignment and refused to accept any such assignment.

A physical examination was again given Mr. Hoepker on April 23, 1953 and in his report of medical history he stated that he had one job in the past three years, but his usual occupation was a minister. He was ordered to report for hospital work at the Manteno State Hospital on September 14, 1953, but refused.

 The defendant's first contention is based on false assumption. The local board and the appeal board failed to grant him a ministerial exemption but there was a factual basis for their refusal. The defendant relies heavily upon Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 156, but he overlooks the statement of our Supreme Court when it said, "Certainly all members of a religious organization or sect are not entitled to the exemption by reason of their membership, even though in their belief each is a minister. * * * And since the ministerial exemption is a matter of legislative grace, the selective service registrant bears the burden of clearly establishing a right to the exemption." In the Dickinson case the registrant clearly set forth the number of hours that he pursued his ministerial duties, and the number of hours he devoted to secular work. Judge Lindley of our 7th Circuit in interpreting the Dickinson case stated:

"[T]he burden is on the claimant to prove himself to be within the group entitled to claim the privilege. The court reviewing an order denying such a claim of privilege may not weigh the evidence. The selective service file may be scrutinized only for the narrow purpose of determining whether any factual basis supports the classification, and in its scrutiny the reviewing court may not require adherence by the administrative body to the niceties of judicial rule of evidence. When and if the court determines that the contested order rests on a basis in fact, its jurisdiction ends, even though the court be convinced that the order is erroneous." United States v. Simmons, 7 Cir., 213 F.2d 901, 903.

In the light of these principles the board was justified in classifying Mr. Hoepker 1–O, and denying a ministerial exemption. United States v. Koch, D.C., 119 F. Supp. 650; United States v. Schuemann, D.C., 119 F.Supp. 640. From his first questionnaire and throughout the record, while he claimed to be a minister, he informed the board that he devoted 65 hours out of each month to ministry work. He never claimed any change in this status, but in his first questionnaire and his conscientious objector's questionnaire he stated that he worked as a machine operator for John Deere Tractor Company and also did farm work. The special hearing officer, Mr. Hutton, did find that he was a bona fide minister, but this was neither binding upon the local board or the appeal board. Imboden v. United States, 6 Cir., 194 F.2d 508, 513; 50 U.S.C.A.Appendix, § 456(j). He never, at any time, gave a factual basis to support the exemption and place himself within the definition of a minister, which required his vocation to be teaching and preaching the principles of religion.[1]

 The defendant in his second and third contention maintains that the draft board and the appeal board refused to decide whether he was entitled to the 4–D classification. The local board from its summary told the registrant that it was unable to judge whether he was a minister or not, but classified him 1–A. The appeal board classified Mr. Hoepker 1–O. He was plainly denied the ministerial exemption by these classifications. Neither the local board nor the appeal board was required by the regulations to deny in so many words the ministerial exemption. If the local board had failed to classify Mr. Hoepker, which they did not do, he was not prejudiced since the

1. 50 U.S.C.A.Appendix, § 466(g) (3).

hearing before the appeal board was de novo. The appeal board was required to hear and dispose of the case independently of the local board's classification, and the classification by the appeal board superseded the classification, if any, of the local board. United States v. Pitt, 3 Cir., 144 F.2d 169, 172. The defendant was not deprived of any procedural rights, either by the local board or appeal board, and there is no merit in his second and third contention.

 The fourth and fifth reasons for acquittal were presented to this court in the case of United States v. Smith, D. C., 124 F.Supp. 406. They were carefully examined and found of no merit.

The defendant Mr. Hoepker is found guilty as charged in the indictment.