**UNITED STATES of America**

v.

**Zane L. MESSERMAN.**

**Cr. No. 12565.**

United States District Court,
M. D. Pennsylvania.

March 3, 1955.

Stephen A. Teller, Asst. U. S. Atty., Wilkes Barre, Pa., for plaintiff.

Richard S. Campagna, Scranton, Pa., for defendant.

WATSON, Chief Judge.

The defendant, Zane L. Messerman, was indicted for refusing to report for civilian work as ordered by his draft board in violation of Section 462, Title 50 U.S.C.A.Appendix. The case was tried by the Court without a jury.

After the government had rested its case, the defendant moved for judgment of acquittal [1] for the following reasons:

---

1. Defendant's counsel labelled his motion, a motion for a dismissal of the indictment.

1. The defendant had been denied procedural due process by his local board inasmuch as his request that his file be reopened was denied him after he had submitted allegedly adequate grounds for reconsideration and reclassification.

2. The defendant had been assigned to a state institution, non-federal in nature, having no connection whatsoever with the Federal Government, for his civilian work assignment, and that such assignment, therefore, amounted to involuntary servitude.

At the close of defendant's testimony and the close of all testimony, defendant renewed his motion on the above specified grounds and in addition thereto on the following third ground:

3. The action of the board in refusing to reopen the file and reconsider the classification of the defendant was arbitrary and capricious.

From the defendant's Selective Service file and other legal evidence, the following facts and circumstances appear:

The defendant properly filled out his "Classification Questionnaire" and returned it to his local board. He stated therein that he was a student preparing for the ministry under the direction of the Watchtower Bible and Tract Society. He requested that he be classified in Class IV–D. In addition, he stated in the questionnaire that, by reason of religious training and belief, he was conscientiously opposed to participation in war in any form, and requested the local board to furnish him with a conscientious objector form.

The local board mailed to defendant a "Special Form for Conscientious Objector", which he filled out and returned. Defendant stated therein that, by reason of his religious training and belief, he was conscientiously opposed to participation in war in any form, and that he was further conscientiously opposed to participation in noncombatant training or service in the armed forces. He claimed complete exemption under Section 6(j) of Title I of the Selective Service Act of 1948[2] as a conscientious objector opposed to participation in both combatant and non-combatant training and service in the armed forces.

On July 12, 1949, the local board denied defendant's claim for a IV–D classification and classified him IV–E. This classification gave him complete exemption as a conscientious objector opposed to participation in both combatant and noncombatant training and service in the armed forces. No appeal was taken by the defendant. On June 19, 1951, the Act was amended, at which time the IV–E classification was abolished and the I–O classification was substituted in its place. The new I–O classification applied to conscientious objectors opposed to both combatant and noncombatant service. On November 27, 1951, Messerman's local board classified him I–O. Again no appeal was taken by the defendant.

On August 28, 1952, the defendant was found acceptable and on September 4, 1952, a certificate of acceptability was mailed to him. The defendant, having been classified I–O and having been found acceptable, was eligible in accordance with the Selective Service Regulations to perform for a period of twenty-four consecutive months such civilian work contributing to the maintenance of the national health, safety, or interest as the local board deemed appropriate. The defendant failed to submit to the local board the types of work he would offer to perform. On September 23, 1953, a letter was sent to the defendant by the local board listing three types of civilian work and requesting the defendant to select the type of work he was qualified to do and offer to perform in lieu of induction into the armed forces. In his reply to this letter, the defendant stated that the only work he would be experienced in would be maintenance work, but asserted he could not

2. Its title was changed on June 19, 1951, from "Selective Service Act of 1948" to "Universal Military Training and Service Act". 65 Stat. 75, 50 U.S.C.A.Appendix, § 451(a).

accept it since he made a covenant to Jehovah God to do His will. Since no agreement had been reached between the registrant and the local board as to the type of work the registrant would perform in lieu of induction, it became necessary for the representative of the Pennsylvania Director of Selective Service to arrange a meeting with the local board and the registrant and offer his assistance in reaching an agreement. Such meeting is provided for in the Regulations. After due notice to the registrant, such meeting was held on November 18, 1953, at which appeared in addition to the registrant and others, Major William C. Halfpenny, Jr., representative of the Pennsylvania State Director. At the meeting the defendant related that he would not be able to come to any agreement since his participation in the work program would conflict with his religious beliefs. In view of the registrant's refusal to come to an agreement, Major Halfpenny advised that it would be necessary for the local board to select a type of work it deemed appropriate together with a plan of employment, and after obtaining the approval of the Director of Selective Service, the registrant would be ordered to perform such work.

On December 29, 1953, the local board met and decided that the registrant should be assigned to hospital work at the Philadelphia State Hospital, Philadelphia, Pennsylvania. In a letter the same date, the local board apprised the State Director of its decision and requested the necessary approval of the Director of Selective Service, Washington, D. C. Such approval was received by the local board on March 30, 1954. Subsequently, the registrant was ordered to report to his local board on April 12, 1954, at which time he would receive instructions to proceed to the place of employment.

In a letter dated April 6, 1954, the registrant informed the local board that on March 25, 1954 he was appointed by the Watchtower Bible and Tract Society as Theocratic Ministry School In-

structor of the Beavertown Congregation of Jehovah's Witnesses. Because of this appointment and his previous status, defendant thought he was entitled to a ministerial classification and requested the board to reopen his classification. After receipt of this letter, the local board met and after careful consideration, notified the registrant that the reopening of his classification and the granting of a personal appearance before the local board had been denied for the reason, inter alia, that the facts contained in his letter of April 6, 1954 presented no facts that would justify a change in his classification.

When the registrant reported to his local board on April 12, 1954, he was advised to report to the Personnel Director of the Philadelphia State Hospital, Philadelphia, Pennsylvania, on April 16, 1954. This was his civilian work assignment. While at the local board on April 12, 1954, the defendant stated that he could not accept this work. He did not report for civilian work on April 16, 1954 as he had been ordered.

■ Messerman first contends that he was denied procedural due process. The board's refusal to reopen the case in April, 1954 at the request of the defendant was not arbitrary and unreasonable nor did it amount to a denial of due process. It is contended that the case should have been reopened upon the new information furnished the local board by the defendant in a letter dated April 6, 1954, in which he apprised the board that he had been appointed Theocratic Ministry School Instructor for his congregation. This constituted another element in defendant's claim to a ministerial status. Whether or not the additional evidence was of sufficient weight to require a reopening of the case lay within the discretion of the board and it cannot be said under the circumstances that the discretion was arbitrarily exercised. Smith v. United States, 4 Cir., 157 F.2d 176.

■ The defendant's next complaint is that there is no support in the record for the classification given him.

Since Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567, the Court is bound to make this inquiry, and if there is no basis in fact for the classification this Court must grant a judgment of acquittal. The Court must consider first the matter of Messerman's claim to be classified as a minister of religion and, therefore, exempt from the draft. It is well settled that merely because he belongs to the body known as Jehovah's Witnesses, all of whose members claim to be ministers to preach the gospel to all the nations, he does not thereby become entitled to the ministerial exemption under the statute and regulations. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132; United States v. Hagaman, 3 Cir., 213 F.2d 86. The ministerial exemption is a narrow one and is described in the statute. The burden is on the registrant to show that he comes within it.

■ The administrative authorities were justified in finding that Messerman did not so qualify. It is true that he was baptized at the age of twenty-two into the Jehovah's Witnesses and he claims to be a minister. This Court must go further and find whether he was a minister in the statutory sense. In United States v. Hagaman, supra, it was pointed out that the flock cannot consist of shepherds only.

When Messerman was asked in the special form for conscientious objectors to name "the pastor or leader of such church, congregation, or meeting" he answered that it was one Roy B. Spiegelmyer, who was the "company servant". Messerman shows some evidence of preaching activities, but those instances are only ten in number at most. At the time Messerman was ordered to report for his civilian work assignment, he was Theocratic Ministry School Instructor and was devoting ninety hours a month to religious activities. Messerman testified that he was not a "pioneer". Pioneers, as this Court understands it, are not "company servants" but are a step up in ranks of the hierarchy from ordinary members. They are obliged to perform a hundred hours a month in the group service. Mr. Spiegelmyer, the company servant, stated in his testimony that the defendant occupied some superior position in the organization and that he is qualified to conduct meetings and would be qualified if any case arose to perform marriages and baptism ceremonies, and conduct funerals. But being qualified is not the same as being assigned and carrying on these duties. There is evidence, undoubtedly, that Messerman did engage in some religious activity. A great deal of church work in every denomination is done by persons who devote themselves without compensation. In many denominations laymen frequently make religious talks without thereby achieving in their own or any one's mind any "ministerial status".

This case presents a problem of deciding on which side of the line Messerman's activities fell. Some circumstances indicate his employment in a ministerial capacity. There were others indicating that he had not reached in the service of Jehovah's Witnesses employment in a ministerial capacity and was a "minister" no matter how that term is used by Jehovah's Witnesses. That being the case, the decision is for the administrative authorities. Estep v. United States, supra.

■ Finally, the defendant contends that the local board had no authority to assign him to work at the Philadelphia State Hospital or to any other work of a non-federal nature. Related to this question are the contentions that the Act as construed and applied by the regulations and the order, calls for a private non-federal labor draft of services that are not related to the national defense in violation of the Thirteenth Amendment of the United States Constitution and deprives the defendant of due process of law contrary to the Fifth Amendment of the Constitution.

There is no longer any question as to the constitutionality of the present Act. Richter v. United States, 9 Cir., 181 F.2d 591. Recent decisions are in accord that

Congress has the right to require conscientious objectors to perform civilian work in lieu of induction into the armed forces, without violating constitutional provisions. United States v. Niles, D. C., 122 F.Supp. 382.

The Act under consideration places no limitation on the type of work to which a registrant classified as I–O may be assigned other than that it be work contributing to the national health, safety, or interest. A health program conducted by any political subdivision of this nation contributes to the general welfare of the nation as a whole. The mere fact that such activities are carried out in the name of a political subdivision of the state or county rather than in the name of the United States itself, does not diminish the importance of the work or cause it to lose its contributory relationship to the national health.

This Court finds no error in the proceedings and there is a basis in fact for the classification given the defendant by his local board. The motion for judgment of acquittal will be denied and an appropriate order will be entered herewith finding the defendant guilty as charged.