UNITED STATES of America,
Plaintiff-Appellee,

v.

Armand Fred HOEPKER, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Walter Gail THOMAS, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Edward L. SMITH, Defendant-Appellant.

Nos. 11336, 11337, 11346.

United States Court of Appeals
Seventh Circuit.

June 13, 1955.

Rehearing Denied July 14, 1955.

Hayden C. Covington, Brooklyn, N. Y., Victor F. Schmidt, Columbus, Ohio, for appellants.

C. M. Raemer, U. S. Atty., East St. Louis, Ill., John Morton Jones, Asst. U. S. Atty., Danville, Ill., for appellee.

Before DUFFY, Chief Judge, and LINDLEY and SCHNACKENBERG, Circuit Judges.

LINDLEY, Circuit Judge.

Defendants were adjudged guilty as charged in separate indictments of violating the Universal Military Training and Service Act, 50 U.S.C.A.Appendix, § 451 et seq., in that each had refused to

perform certain civilian work to which he had been assigned by his local board.

The facts in all three cases are essentially the same. Each defendant, on his application, was classified I–O, (conscientiously opposed to participation in war), by his local board. This classification obligated him to perform, in lieu of military service, civilian work "contributing to the maintenance of the national health, safety, or interest" in accord with the orders of his local board. Section 6(j), 50 U.S.C.A.Appendix, § 456(j). Acting in pursuance of the provisions of that subsection, as implemented by Selective Service Regulations Secs. 1660.1 and 1660.20, 32 C.F.R. §§ 1602 et seq., the board ordered defendants to report for civilian work as follows: Hoepker, to Manteno State Hospital, Manteno, Illinois; Smith to Kankakee State Hospital, Kankakee, Illinois; and Thomas to University of Chicago Clinics, Chicago, Illinois. Smith reported to the hospital but refused to perform the assigned work. Both Hoepker and Thomas refused to report.

The chief contention of each appellant is that the regulations and the boards' orders to perform civilian work at the state hospitals and the University Clinics, issued pursuant thereto, are in conflict with the Act, because the work is private and not "national" or "federal." This argument has been repeatedly urged in efforts to upset orders requiring work in hospitals and other charitable institutions under the control and direction of the several states and their subdivisions, and has been unanimously rejected. United States v. Pomorski, D.C., 125 F. Supp. 68, affirmed 6 Cir., 222 F.2d 106; United States v. Niles, D.C., 122 F.Supp. 382, affirmed 9 Cir., 220 F.2d 278; United States v. Sutter, D.C., 127 F.Supp. 109; United States v. Copeland, D.C., 126 F. Supp. 734; United States v. Hoepker, D.C., 126 F.Supp. 118; United States v. Kinney, D. C., 125 F.Supp. 322; United States v. Smith, D.C., 124 F.Supp. 406; United States v. Thomas, D.C., 124 F. Supp. 411; United States v. Messerman, D.C.M.D.Pa., 128 F.Supp. 759; United States v. Wylie, N.D.Cal., May 17, 1954; United States v. Olvera, S.D.Tex., 132 F. Supp. 565, Sept. 3, 1954; United States v. Diercks, D.C.E.D.Ill., 133 F.Supp. 78, Sept. 29, 1954. We are convinced that these decisions embody the correct rule governing this question with respect to the appeals of Hoepker and Smith. No purpose would be served by repeating what has been so frequently and so ably stated by other courts.

The question before us on this phase of Thomas' appeal is whether civilian work in a private clinic is authorized under Section 6(j). Section 1660.1(a) (2) of the regulations specifies, as appropriate civilian work, employment in nonprofit organizations engaged primarily in charitable activities for the benefit of the general public "or in carrying out a program for the improvement of public health or welfare * * * when such activity or program is not principally for the benefit of the members of such organization * * * or for increasing the membership thereof."

This administrative definition, we think, constitutes a valid exercise of the discretion vested in the President to outline a program of civilian work "contributing to the maintenance of the national health" and welfare. Congress has declared that maintenance of the mental and physical health of our population is a subject of vital federal concern in times of emergency. And Section 6(j), which contains this declaration of policy, defines appropriate employment in terms of the nature of the work to be done, without reference to the control of the institutions to which conscientious objectors may be assigned. The protection of the public health is no less work of national importance whether it is done in an institution controlled by federal or by state authorities or by a private charitable corporation.

The evidence is conclusive that the University of Chicago is a non-sectarian, nonprofit corporation, and that its clinics, to which Thomas was ordered to report for work, minister, on a charitable basis, indiscriminately, to alleviate

the physical ills of the general public. In addition to that activity, these clinics, aided by grants of federal funds, carry on extensive research in cancer and other diseases. We hold that this is work of "national" importance which the Act authorized.

United States v. Sparks, D.C.S.D.Ind., February 11, 1955, is inapposite. There the court held that assignment of a conscientious objector to work in a charitable institution which was sponsored and controlled by a competing religious sect was a restraint on the registrant's freedom of religion in violation of the First Amendment. The decision in United States v. Copeland, D.C., 126 F.Supp. 734, striking down an order assigning a conscientious objector to work for a private charitable institution, turned on the failure of the government to introduce evidence to show whether the corporation was under sectarian or non-sectarian control and to show the nature and scope of the work done. If, as defendant contends, that decision is to be read as holding that assignment to any privately controlled institution is *per se* unauthorized, we are in respectful disagreement.

■ Defendant's further contentions that the Act, so construed, conflicts with the Thirteenth Amendment and the due process clause of the Fifth Amendment must also be rejected as unfounded. The argument based on the Thirteenth Amendment has been disapproved by several courts. United States v. Pomorski, D.C., 125 F.Supp. 68, affirmed 6 Cir., 222 F.2d 106; United States v. Niles, D.C., 122 F.Supp. 382, affirmed 9 Cir., 220 F.2d 278; United States v. Sutter, D.C., 127 F.Supp. 109; United States v. Kinney, D.C., 125 F.Supp. 322; United States v. Hoepker, D.C., 126 F.Supp. 118; United States v. Smith, D.C., 124 F.Supp. 406; United States v. Thomas, D.C., 124 F. Supp. 411. We agree with the postulate on which these decisions are based that assignment to a non-federal hospital does not constitute involuntary servitude. In our ardor to preserve individual civil rights pursuant to the mandate of the Constitution, we are prone to lose sight of the duties which every citizen owes his nation and his government under that document. The war power, which is reserved to Congress, encompasses authority to conscript manpower to defend the nation during a national emergency. Selective Draft Law Cases (Arver v. U. S.), 245 U.S. 366, 38 S.Ct. 159, 62 L.Ed. 349. A necessary correlative is the duty of all Americans to serve when called. The strength and vitality of a nation is measured by criteria broader than a numerical count of its men-at-arms. On receipt of the I–O classification, by grace of their government, conscientious objectors are relieved from the duty to serve in the armed forces. Since it cannot be successfully argued that Congress lacks power to require military service of all, it has the lesser power to require of registrants who invoke the privilege of exemption by claiming a I–O classification, civilian work calculated to strengthen the nation in times of emergency.

It is of no moment under whose direction the work is done. If it aids in our preparedness, civilian service is not open to challenge as involuntary servitude. We need only state the analogy sought to be drawn between the work to which these defendants were assigned and assignment to Macy's basement to demonstrate that the analogy in fact does not exist.

■ The contentions based on the Fifth Amendment are equally wanting in merit. The objects sought to be attained by the Act are national defense and military preparedness. We believe that what has already been said in this memorandum sufficiently demonstrates that the means selected by Congress, *i. e.*, the assignment of conscientious objectors to work for the protection of the public health, bears a real and important relationship to those objects. We find no denial of due process of law. See United States v. Niles, D.C., 122 F.Supp. 382, 384, affirmed 9 Cir., 220 F.2d 278.

The judgments are

Affirmed.