**UNITED STATES of America, Appellee,**

v.

**Irby Levon JONES, Appellant.**

**No. 11115.**

United States Court of Appeals Fourth Circuit.

Argued May 29, 1967.

Decided Aug. 29, 1967.

Arthur W. Kupfer, Baltimore, Md. (court-appointed counsel), for appellant.

Theodore R. McKeldin, Jr., Asst. U. S. Atty. (Thomas J. Kenney, U. S. Atty., and Roger C. Duncan, Asst. U. S. Atty., on brief), for appellee.

Before BOREMAN, BRYAN and WINTER, Circuit Judges.

BOREMAN, Circuit Judge.

Irby Levon Jones was indicted for failure to report for and perform civilian service as directed by an order of the Selective Service Board in violation of 50 U.S.C. App. § 462(a). After a trial before the court he was found guilty and was sentenced to serve four years in prison. He appeals, alleging that he was entitled to a ministerial exemption from all military service and that he was

physically unfit to be inducted. Perceiving no error, we affirm.

Defendant's Selective Service "jacket," which was the only evidence introduced by the Government, revealed that in 1962, upon his eighteenth birthday, Jones registered with his local board in Meriwether County, Georgia. On a questionnaire returned to the board on August 20, 1962, defendant stated that he was a high school student, preparing for the ministry in Jehovah's Witnesses under the Watchtower Bible and Tract Society, and a conscientious objector. He claimed further that he had been formally "ordained" on August 4, 1962. Defendant was subsequently classified II-S, which is a student deferment, and he notified the local board of his desire to appear before it in order to obtain a ministerial exemption. This appearance resulted in a referral to the Justice Department for an examination into his status as a conscientious objector.

On July 30, 1964, the Watchtower Society advised the local board that Jones had been appointed a full-time "pioneer minister" on March 1, 1964, and had been performing such duties since that time. However, in March 1965 defendant advised the State Appeal Board that he had terminated his position as a pioneer because of his marriage and that he was performing secular duties forty hours per week in order to support his family. At that time he reported that he was confining his religious endeavors to thirty hours per month.

On July 16, 1965, the Appeal Board for the Northern District of Georgia classified defendant as a conscientious objector.

Defendant reported for a physical examination in September 1965 and was found acceptable for induction. In answer to a question regarding his present health he stated that it was "good." Consistent with his classification as a conscientious objector Jones was asked to state his civilian work preferences. He answered that he had none and that his only preference was to perform ministerial services.

On November 16, 1965, defendant's mother advised his local board that defendant suffered from chronic purpura, a condition which results in hemorrhaging beneath the skin's surface.

At about the same time, the National Director offered three types of work to defendant at Crownsville State Hospital, Crownsville, Maryland. Defendant refused to perform any of the types of work. A meeting was held on December 28, 1965, in which the local board attempted to reach an agreement with defendant regarding the performance of civilian work. Again he declined to perform such work. The National Director, after obtaining permission from his local board, ordered defendant to perform civilian work at Crownsville State Hospital in Maryland and to report to his local board on February 8, 1966. Defendant reported to his local board but again refused to perform civilian work. On August 2, 1966, defendant was indicted by a federal grand jury for the district of Maryland for failure to comply with his local board's order to report for and perform civilian work in Maryland. Defendant was then working full time with Federal Paperboard Company, Inc., in Georgia.

■■ In a criminal prosecution for a refusal to obey an order of a Selective Service Board the scope of judicial inquiry into the validity of the Board's decision is very limited. Decisions of the Board as to classification, made in conformity with the regulations, may be upset by the courts only if it clearly appears that there is no basis in fact for such classification. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); United States v. Jackson, 369 F.2d 936, 938 (4 Cir. 1966); Blalock v. United States, 247 F.2d 615, 619 (4 Cir. 1957). The question then is whether the Board's classification of defendant as a conscientious objector, its refusal to classify him as a minister and grant him a ministerial exemption are without any basis in fact.

■ In order to establish entitlement to a ministerial exemption it was

necessary for Jones to prove that he regularly and customarily taught and preached the principles of his religion, administered the ordinances of public worship embodied therein, and that he performed these functions, not incidentally or as his avocation, but regularly as his vocation. 50 U.S.C. App. § 466(g) (1), (3); Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953); United States v. Jackson, supra; United States v. Stewart, 322 F.2d 592 (4 Cir. 1963). In *Jackson* we held that a local board's refusal to grant a ministerial exemption to one ordained as a minister in Jehovah's Witnesses who performed secular labor for forty hours per week was not without basis in fact. We noted that while the mere fact that the registrant performed secular labor is insufficient to serve as the basis for denial of the exemption, "there is a point at which the relative amount and type of secular activity may permit such a decision." 369 F.2d at 938–939. See Dickinson v. United States, supra; United States v. Stewart, supra.

 At the time of his classification as a conscientious objector, Jones performed secular work for forty hours per week and engaged in religious work for only twenty to thirty hours per month. He did relatively little preaching or teaching, and was engaged primarily in instructional duties at the Kingdom Hall and the Service Center. These activities were conducted in the evenings. It seems clear, both from the quantity and quality of his activities, that Jones was not regularly and customarily engaged in the performance of ministerial duties. Any performance of such duties was done incidentally and was more in the nature of an avocation. Jones' assertion that the necessity of performing secular labor prevented him from devoting greater time to ministerial duties, no matter how meritorious, was for the local board to consider and on the basis of the facts before us we cannot say that the denial of a ministerial exemption lacked basis in fact.

We turn next to a consideration of defendant's contention that he was physically unfit for induction into military service. Before the District Court, Jones for the first time asserted that because he was afflicted with purpura he was physically unfit for induction. He seems to rely on his mother's letter to the board apprising it of the fact. However, at no time did Jones inform his local board of this condition. On a questionnaire filed with the board on August 20, 1962, he stated that he did not know of any physical or mental condition which would, in his opinion, disqualify him from service in the Armed Forces. In September 1965, at the time of his physical examination and in answer to a form question, Jones stated that his health was "good."

Jones did not seek to reopen or alter his classification for reasons of health, as provided by 32 C.F.R. § 1625.1 and § 1625.2 (1962). Thus, he failed to give his local board the opportunity to reconsider his classification. With his medical record in such posture, the board's classification was not unreasonable and was not without a factual basis.

Affirmed.