UNITED STATES of America, Appellee,

v.

Emerson Lee JONES, Appellant.

No. 11138.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 2, 1967.

Decided Nov. 8, 1967.

George W. Farley, Richmond, Va., (Court-appointed counsel) for appellant.

Michael Morchower, Asst. U. S. Atty., (C. V. Spratley, Jr., U. S. Atty., on brief) for appellee.

Before BOREMAN, BRYAN and CRAVEN, Circuit Judges.

BOREMAN, Circuit Judge:

Emerson Lee Jones was indicted for violation of 50 U.S.C.A.App. §§ 456(j) and 462 in failing to report for and perform civilian service as ordered by his Selective Service Board in lieu of induction into the Armed Forces. After a trial to the court without a jury, he was convicted and sentenced to three years' imprisonment. On appeal he challenges the propriety of his Selective Service classification as ultimately determined by his local board and the refusal by the board to reopen his case when he allegedly provided it with prima facie evidence of his entitlement to a ministerial exemption. We affirm.

On several occasions we have discussed questions arising in this area.[1] Therefore, as the instant case involves matters which we have considered and determined so recently a comparatively brief discussion here should suffice.

Although Jones' Selective Service file reveals a rather lengthy history of interviews and correspondence incident to his classification, the pertinent facts can be summarized briefly.[2] On registering with the Selective Service System in January 1964, Jones informed his local board that he was a conscientious objector and a "minister" of the Watchtower Bible and Tract Society (Jehovah's Witnesses) and that he desired to avail himself of the ministerial exemption. Following receipt of notice of an initial 1–A classification (denoting immediate availability for active duty), Jones appeared personally before the board. However, his attempt to secure a change in his classification being unsuccessful, he filed an appeal with the Appeal Board which in turn referred his case to the Department of Justice. Finally in June 1965, acting on the recommendation of the Department of Justice, the local board classified Jones as a conscientious objector. For the next eleven months and until May 1966, when he was ordered by the local board to report for civilian work, Jones continued his efforts to have the board reopen his case and reconsider his claim to a ministerial exemption. The board, however, refused to do so.

---

1. See, e. g., United States v. Jones, 382 F.2d 255, No. 11,115 (4 Cir. August 29, 1967); United States v. Jackson, 369 F.2d 936 (4 Cir. 1966); United States v. Stewart, 322 F.2d 592 (4 Cir. 1963). See also Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953); Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946).

2. The Government's witness, an Air Force officer assigned to the office of the Virginia State Director of Selective Service, had with him at trial Jones' Selective Service file, a photostat of which was introduced into evidence.

Our view of this case makes unnecessary a more detailed review of the facts. We need mention only that his file reveals that Jones was formally ordained into the Witness ministry in 1956,[3] and during the period here involved held positions as ministry school servant, book study conductor, Bible study servant, and assistant presiding minister. By virtue of these various offices, Jones not only participated in the door-to-door evangelistic endeavors of his faith, but also conducted weekly classes in the techniques of this type of preaching and directly supervised the activities of twelve brothers. The district court further found that the board was warranted in deciding that Jones devoted approximately fifty hours a month to his various ministerial tasks while at all times engaging in secular employment for approximately forty hours a week.[4]

█ While the record undoubtedly reveals Jones' ever-increasing religious activity, his offices and activities do not establish him as a minister within the meaning of 50 U.S.C.App. § 466(g) (1). His duties and religious works may vary from those of some of his fellow believers in the variety of tasks he performs and in the titled offices he holds, and he may exercise a certain degree of authority over his class and over the twelve men whose activities he directs. But nowhere do we find any evidence that Jones is *the* religious leader of his congregation; rather it appears that he is simply an active worker within the congregation, engaged primarily in the usual Witness tasks of spreading the beliefs of their faith and of teaching others within the church to be more effective in their proselytizing endeavors. Apparently the congregation servant is the member of the local Witness group who performs the functions normally perform-

ed by ordained ministers of other religions and who is regarded by the members of the congregation as their religious leader. Jones admits he has never held this position. As we have observed previously, Congress intended to provide the ministerial exemption for the leaders of religious faiths but not for the members generally, whatever may be their titles within their sects. See United States v. Stewart, 322 F.2d 592, 594 (4 Cir. 1963).

█ Under these circumstances we cannot say that the Board's refusal to classify Jones as a minister and to grant him a ministerial exemption was without basis in fact. His conviction is therefore affirmed.

Affirmed.

█

3. Ordination into the Witness ministry is by baptism into the faith. Jones was twelve years old at the time of his baptism/ordination.

4. His file revealed that Jones informed the board that he was devoting fifty hours a month to his ministerial duties.

At trial, however, Jones testified that he had told the board that he was engaging in ministerial functions for ninety hours a month. The district court credited the board's records in this respect and we cannot say that this determination was incorrect.