David Leroy **DANIELS**, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

No. 22523.

United States Court of Appeals
Ninth Circuit.

Dec. 4, 1968.

**1050**

J. B. Tietz, Los Angeles, Cal., for appellant.

Arnold G. Regardie (argued), Asst. U. S. Atty., Wm. M. Byrne, U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Crim. Div., Los Angeles, Cal., for appellee.

Before JOHNSEN*, BARNES and DUNIWAY, Circuit Judges.

JOHNSEN, Circuit Judge:

Appellant's original conviction for violation of section 12(a) of the Universal Military Training and Service Act, 50 U.S.C. Appendix § 462(a), was reversed in Daniels v. United States, 372 F.2d 407 (9 Cir. 1967). This appeal is from his reconviction on the new trial there granted. We affirm.

The situation is the common one occurring in the Selective Service System from claim being made by the members of the sect of Jehovah's Witnesses that each of them is a minister. Appellant sought a IV-D classification (minister of religion), was found by his local board and his appeal board to be entitled only to a I-O classification (conscientious objector); and refused thereafter to obey the order of his local board to report to perform "civilian work contributing to the maintenance of the national health, safety, or interest", 50 U.S.C. Appendix § 456(j), which the board had deemed appropriate in the situation.

The primary contention here is that there was no basis in fact for the board's denial of appellant's claim to a IV-D classification. The record amply demonstrates the contrary. As indicated by the District Court, the file of the board showed that appellant had stated in his registration for the draft, "When I work I do farm work"; that he stated in the classification questionnaire which he later filed that he was then holding a job in a packing plant, earning $2.14 per hour, and working an average of 40 hours per week; and that he subsequently stated in a personal appearance before the board that he was not a "pioneer" (regular minister of the congregation to which he belonged), but was spending 17 to 18 hours a week in congregational and field tasks which he regarded as ministry work.

Appellant was permitted to introduce evidence at the trial going beyond the contents of the board's file, but which failed to demonstrate that any arbitrariness was involved on the part of the board or that some fundamental injustices existed in the result. As a matter of fact, part of the testimony would have lent additional support to the board's action, if it had been entitled to consideration. Thus, appellant testified to the effect that each year he took a lay-off or quit his job for about a month in order to do full-time "ministry" work during that period. He went on to state that "I looked forward to the time I could engage in full-time ministry work and get in a field to support yourself [sic] and engage in ministry full time".

We cannot hold that the board's determination that appellant was unentitled to a IV-D classification was without a basis in fact on the information reflected by his selective service file. Such partial expenditures of time as appellant gave to congregational and field tasks could properly be found, and

---

* Harvey M. Johnsen, Senior Circuit Judge of the Eighth Circuit, sitting by designation.

indeed ought legally only to be held, not to have been put in by him in vocational status, within the scope of the "minister" exemption of 50 U.S.C. Appendix § 456 (g). As Dickinson v. United States, 346 U.S. 389, 395, 74 S.Ct. 152, 157, 98 L.Ed. 132 (1953) long ago made clear, any performance of preaching, teaching, and other ministry activities "must, as the statute reads, comprise the registrant's 'vocation.'" See also Badger v. United States, 322 F.2d 902 (9 Cir. 1963); United States v. Kushmer, 365 F.2d 153 (7 Cir. 1966); United States v. Jones, 386 F.2d 427 (4 Cir. 1967); Kuykendall v. United States, 387 F.2d 594 (10 Cir. 1968); Jones v. United States, 387 F.2d 909 (5 Cir. 1968).

■ Appellant's only other contention for reversal is that the civilian work which he was ordered to report to perform was inappropriate to his situation, "in that [as his brief puts it] it involved elements contrary to his religion". The work involved was that of an institutional helper for the Los Angeles Department of Charities. At the trial, appellant testified that it was his understanding that such work might involve some handling of blood, whereas, according to his religious beliefs, "blood is sacred" and "in no way are we to use blood". But on cross-examination, he admitted that he equally would have refused to perform any other civilian work in substitution for military service because performance of any contributing civilian tasks upon this basis would be "against our religious beliefs". In the Special Report for Class I-O Registrants executed by him, he had similarly declared that he could not perform civilian work in lieu of military service "due to my standings and belief". In a subsequent conference, the board had offered him his choice of working as an institutional helper for the Los Angeles Department of Charities, as a truck-driver helper at the Good Will Industries in Los Angeles, or as a psychiatric technician trainee at the Atascadero (California) State Hospital. He refused to engage in a choice, saying that for him to do any civilian work would in the circumstances "still [be] contributing to the [military] interests of the Government". When he was interviewed once more thereafter, he further declared that he would refuse to report for any such work at all, whether ordered to do so by his local board or by any other board. It was after this that the local board made the institutional-helper selection and issued its order.

In this situation the court was entitled to find that the reason for appellant's refusal to obey the order made by the board was his objection to performing any civilian work in lieu of military service and not such scruples as he might otherwise have had against the particular work to which he was assigned. On the manifest artificiality of his asserted defense, the question of the appropriateness of the work assigned was not one which called for any consideration as to his violation and guilt.

■ Under the holding of Langhorne v. United States, 394 F.2d 129, 130–131 (9 Cir. 1968), a conscientious objector may not deny his local board's right to require him to perform any civilian work whatever, refuse to make any choice as to willingness to perform among the several kinds of work so offered him, and then, on his prosecution for failing to report to perform the particular work designated by the board, undertake to set up the defense that he regards the work as not being appropriate. On his unwillingness to engage in any such discussion before the board when he was afforded the opportunity to do so, and with his continued adherence to an unwillingness to perform any work designated by the board in lieu of military service the question of the appropriateness of the particular work assigned to him would be a matter of no significance on his trial as related to his intent to violate the Act in refusing to obey the board's order. This would be so whether the situation was characterized as one of mootness, estoppel or waiver.

Affirmed.