**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

*William Crosby CROUCH, Jr.,* Defendant-Appellant.

**No. 26946.**

United States Court of Appeals
Fifth Circuit.

Sept. 4, 1969.

John W. Hutchison, Lafayette, La., court appointed, for appellant.

Edward L. Shaheen, U. S. Atty., Q. L. Stewart, Asst. U. S. Atty., Shreveport, La., for appellee.

Before AINSWORTH and GODBOLD, Circuit Judges, and DAWKINS, District Judge.

AINSWORTH, Circuit Judge:

Appellant William Crosby Crouch, Jr., a member of the religious sect known as Jehovah's Witnesses and classified as a "conscientious objector" by Selective Service Local Board No. 62, Franklin, Louisiana, was convicted of having refused to report for "work contributing to the national health, safety or interest" as ordered by the Local Board, in violation of 50 U.S.C. App. § 462. Appellant entered a plea of not guilty, waived trial by jury, and was tried by the court which found him guilty. He was sentenced under the provisions of the Federal Youth Corrections Act, 18 U.S.C. § 4209.[1]

1. The following is a chronology of events leading up to appellant's conviction:

July 16, 1964. Appellant registered with Local Board No. 62, Franklin, Louisiana.

July 23, 1964. By reason of his being a member of the Jehovah Witness sect, appellant claimed a Conscientious Objector classification.

August 24, 1964. The Board granted appellant a Conscientious Objector (I–O) classification, and informed him of his right to appeal and to appear before the Board.

November 25, 1964. The Board mailed to appellant an order to report for a physical examination.

December 14, 1964. As a result of the examination appellant was deemed physically and mentally fit for induction and was so informed.

December 16, 1965. The Board mailed to appellant SSS Form No. 152, "Special Report for Class I–O Registrants."

December 21, 1965. Appellant returned the form indicating that he was volunteering for civilian work in lieu of induction. He stated a preference for employment at the three following institutions, which were contained on an approved list of civilian work institutions: Lighthouse for the Blind, Hotel Dieu, and Magnolia School, Inc. The Board thereupon endeavored to find employment for appellant in the institutions of his choice.

March 14, 1966. Appellant wrote to the Board requesting to be excused from the Civilian Work Program for "hardship" reasons, claiming to be the sole support of his mother, sister and brother. The Board gave due consideration to the request.

May 18, 1966. Appellant withdrew his former "hardship" claim and stated that he was ready to accept employment when it became available.

June 16, 1966. The Board accordingly reclassified appellant I–O, informed him of that classification and his right to appeal and of personal appearance before the Board, and then commenced seeking a suitable place of employment for him.

September 10, 1966. Appellant wrote the following letter to the Board stating that he had changed his mind, and that he refused to accept any work whatsoever.

"Dear Miss Deslatte,

"I have reconsidered the fact of working under the Civilian Work Program. Under my religious beliefs as a Jehovah Witness I feel this to have been a big mistake under my part. Having studied the Bible more on this service I see that I made a big mistake because this would be a substitution for military service. Jehovah Witnesses do not participate in any worldly affairs such as Wars, fights, disturbing the peace, voting, or any other things that are done in the world today.

"If I would work under this Program I would be participating in an affair under man's laws and not under God's laws in the Bible. I do not want any kind of work that man sets under his rules, for God is man's ruler and peace giver.

"In the Bible it states at Jas. 1:27 4:4: 'Do you not know that the friendship with the world is enmity with God? Whoever, therefore wants to be a friend of the world is constituting himself an enemy of God.'

"I am very sorry that I signed these papers to become a civilian worker, but I feel very different about doing this work now. It isn't the money nor the question of helping sick people but it is the question do I want to be a true Christian or a worldly man being under man's views. Very sorry for all the trouble I've caused the Draft board but I refuse to work for the government under any work so ever.

"Your truly,

/s/ William C. Crouch, Jr.

SS No. 16–62–46–182"

Crouch contends on appeal that the Southern Baptist Hospital of New Orleans, Louisiana, to which institution he was ordered to work by the Local Board, was an unsuitable place of employment, inasmuch as it is owned and controlled by a competing religious sect, and that the order of the Board to report to that institution was illegal because it attempted to force him to aid another religious group and deprived him of his right to free exercise of his chosen religion in violation of the First Amendment.

The only evidence relied upon by appellant in support of his contention is the charter of Southern Baptist Hospital. The charter shows that the hospital is a wholly owned and controlled subsidiary of the Southern Baptist Convention, and as stipulated by counsel, the Convention is composed of member Baptist churches and is a religious organization. Appellant argues that ownership, supervision and control by the Convention is

tantamount to a conclusion that the hospital is a religious organization, and that employment therein of persons of his status aids a competing religion, prohibited by the Constitution as particularly enunciated in People of State of Illinois ex rel. McCollum v. Board of Education, 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649 (1948). In that case a board-of-education-sponsored program of religious instructions, given during school hours to public school pupils whose parents consented thereto, was held to be violative of the "establishment clause" of the First Amendment. In holding that the program was constitutionally banned, the court characterized it as a "utilization of the tax-established and tax-supported public school system to aid religious groups to spread their faith," and reiterated its holding in Everson v. Board of Education of Ewing Tp., 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947), that "Neither [a state or federal government] can pass laws which aid one re-

September 16, 1966. The Board wrote to appellant, furnishing him with a list of approved work institutions in Louisiana, and offered assistance in obtaining employment in any type of work he might choose from the list for which he was deemed qualified, and in compliance with Selective Service Regulation 1660.20 (b) submitted to appellant the following three types of approved civilian work and corresponding institutions which the Board considered appropriate:

"Institutional Work—Goodwill Industries of New Orleans

Hospital Work—Mercy Hospital, New Orleans

Aid to Blind Persons—Lighthouse for the Blind, New Orleans"

The letter further informed appellant that he was required by regulation to file a statement stating whether he would or would not offer to perform one of the types of work submitted.

September 16, 1966. Appellant replied by letter, "I do not offer to perform any of such types of work submitted by this Local Board."

October 5, 1966. The Board ordered appellant to appear before it at a special meeting to be held on October 18, 1966.

October 18, 1966. Appellant attended the meeting with the Board and a representative of the Louisiana State Director

of Selective Service. No agreement could be reached with appellant to perform work under the Civilian Work Program. Appellant signed a statement to the same effect.

November 29, 1966. The Board informed the National Director of Selective Service that appellant had refused to accept employment, that work was available for him at Southern Baptist Hospital of New Orleans, and requested the National Director to approve the issuance of an order to appellant to perform institutional work at that hospital.

December 6, 1966. The National Director approved the issuance of the order.

December 14, 1966. The Board wrote to appellant enclosing SSS Form No. 153, "Order to Report for Civilian Work and Statement of Employer," ordering appellant to report to Local Board No. 62 on December 29, 1966, for instructions to proceed to institutional work located at Southern Baptist Hospital, New Orleans, Louisiana.

December 29, 1966. Defendant failed to report as ordered. Appellant made no objection to the Local Board relative to the order prior or subsequent to the reporting date.

Appellant was subsequently indicted, tried and convicted.

ligion, aid all religions, or prefer one religion over another." 333 U.S. at 210, 68 S.Ct. at 465.

The cases are patently distinguishable. In People of State of Illinois ex rel. McCollum v. Board of Education, supra, the constitutionally objectionable activity was admittedly the spread of religious faith by instructions paid for by taxpayers. In the instant case the objectionable activity is hospital work. The "aid" given, in the employment of registrants under the civilian work program, is not for the benefit of a religious group—it is for the sick, the health and welfare of the general public, as we will show in our subsequent discussion in this opinion.

Appellant also relies on the Supreme Court decisions of Follett v. Town of McCormick, S.C., 321 U.S. 573, 64 S.Ct. 717, 88 L.Ed. 938 (1944); West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943), and Cantwell v. State of Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), which respectively struck down as unconstitutional restraints on freedom of religion, (1) a license tax on selling books as applied to a Jehovah Witness preacher, (2) a resolution requiring school children to salute and pledge allegiance to the American flag, and (3) a statute which prohibited the solicitation of funds for alleged charitable purposes without prior approval of the public welfare council secretary and his determination that the cause was a charitable one. Again, the distinction between the present case and the cited Supreme Court cases lies in the nature of the activity objected to by appellant. There is no rational basis for equating hospital work, as described in the present case, with the establishment of a religion, aid to a religion, or the restraint of a religious freedom.[2]

The statute provides that a registrant conscientiously opposed to active service in the armed forces may be assigned to noncombatant service. If he is also found to be conscientiously opposed to participation in such noncombatant service, as was appellant here, a registrant may in lieu of induction be assigned to perform appropriate civilian work "contributing to the maintenance of the national health, safety, or interest." (50 U.S.C. App. § 456(j).)

The instant case turns on the question of what is "appropriate civilian work." The definition thereof is contained in 32 C.F.R. 1660.1 (Selective Service Regulation 1660.1) in pertinent part as follows:

"(a) The types of employment which may be considered under the provisions of section 6(j) of title I of the Military Selective Service Act of 1967 [formerly known as the Universal Military Training and Service Act] to be civilian work contributing to the maintenance of the national health, safety, or interest, and appropriate to be performed in lieu of induction into the armed forces by registrants who have been classified in Class I-O shall be limited to the following:

\* \* \* \* \* \*

"(2) Employment by a nonprofit organization, association, or corporation which is primarily engaged either in a charitable activity conducted for the benefit of the general public or in

---

2. Appellant relies on an unreported decision in United States v. Sparks, S. D., Indiana, 1955, which is referred to in United States v. Hoepker, 7 Cir., 1955, 223 F.2d 921, 923. Hoepker affirmed a District Court holding that a private clinic was an appropriate place of employment under the Act. We learn from Hoepker that the Court in Sparks held an assignment of a conscientious objector to work in a charitable institution, controlled by a competing religious sect, to be a restraint on his freedom of religion, 223 F.2d at 923. We are also informed by counsel for appellant here that Sparks, like Crouch, had refused to do any work and had been ordered to report to work at a Methodist Hospital, making the case factually indistinguishable from the instant one. If the facts are indistinguishable, we must respectfully disagree with the conclusion reached by the District Court in the Sparks case.

carrying out a program for the im-' provement of the public health or welfare, including educational and scientific activities in support thereof, when such activity or program is not principally for the benefit of the members of such organization, association, or corporation, or for increasing the membership thereof." [As amended July 4, 1967.]

The Government introduced evidence to show that the Southern Baptist Hospital was an appropriate place for civilian work under the pertinent Selective Service Regulations. The evidence shows that the institution is a nonprofit institution, engaged in charitable activity for the improvement of the public health or welfare. It literally fulfills the criteria of the Regulations defining "appropriate civilian work." The Government also produced a list of approved institutions, showing that the hospital has been on the list for many years, as well as testimony of Selective Service officials to the effect that approval by the national and state directors of Selective Service is a prerequisite for placing an institution on the list as well as for assignment of a certain individual to a particular institution.

Although appellant concedes that the burden of proving that the particular institution is an appropriate one is not upon the Government, he contends that the fact that the hospital is on the "approved list" is merely a presumption that it is an appropriate institution, which he has overcome by showing that the hospital is wholly owned and controlled by the Southern Baptist Convention, a religious organization competitive with his own religious sect.

■ The District Court found, and we agree, that a showing of mere ownership and control of the hospital by the Baptist Convention was insufficient to establish that the work performed by the hospital was of a religious nature. The Government proved that the work of the hospital, a non-profit corporation, is to care for the sick and afflicted. The

record is devoid of any evidence that the institution is secular in its operation. There is nothing in the record from which it may be inferred that the hospital staff members, employees or patients must be of the Baptist faith, nor is there any showing that the Baptist religion is practiced in the hospital or that religious worship is imposed on its patients or employees.

■ At no time did appellant make known to the Local Board any objection to the institution selected, although he had adequate time in which to do so. Instead he unconditionally refused to perform civilian work of any kind under the program and chose to disobey the order to report. Appellant's Selective Service file is a protracted and lengthy case history of attempts by the Local Board and Selective Service officials to placate and cooperate with appellant despite a series of vacillating maneuvers on his part. We agree with the Ninth Circuit that "[A] registrant may not overturn the action of the board ordering him to work on any ground not disclosed to the board. A registrant may not, as did appellant, refuse any work and then later conjure up objections to the work assigned." Langhorne v. United States, 9 Cir., 1968, 394 F.2d 129, 130, 131.

In Yaich v. United States, 9 Cir., 1960, 283 F.2d 613, as in the instant case, all types of civilian work in lieu of induction, including three specific types offered to the registrant, were refused. The Court held (at 620), " * * * appellant having categorically refused any type of civilian work is in no position to claim prejudice. Failure to comply with Selective Service Regulations which do not prejudice a registrant are not grounds for upsetting conviction based on disobedience of induction or civilian work. Uffelman v. United States, 9 Cir., 1956, 230 F.2d 297; Kaline v. United States, 9 Cir., 1956, 235 F.2d 54." See also Jessen v. United States, 10 Cir., 1957, 242 F.2d 213, 215, in which the Court upheld the validity of a local board's order directing a Jehovah Wit-

ness registrant to report to work following his refusal to select employment from a list of eligible institutions.

In Elizarraraz v. United States, 5 Cir., 1968, 400 F.2d 898, we rejected another similarly superficial defense of a Jehovah Witness who, after having refused to perform any type of civilian work, argued on appeal that his refusal was not directed to the work but only to filling in the application form presented to him and that this act did not constitute a violation of the statute. We remarked (at 902) that "The requirement to do civilian work in lieu of military induction cannot be frittered away by such defenses as those raised on this appeal." The District Court in the present case was of the opinion that the defense was clearly an afterthought and that there was "no indication that defendant would comply with any order issued to him by the board." Appellant's constant wavering and his refusal to accept any work or type of work under the civilian work program persuade us to the same view.

■ There is no constitutional right to exemption from military service because of religious belief. This right comes from Congress. Jacobson v. Massachusetts, 197 U.S. 11, 29, 25 S.Ct. 358, 362, 49 L.Ed. 643 (1905). In United States v. Macintosh, 283 U.S. 605, 624, 51 S.Ct. 570, 575, 75 L.Ed. 1302 (1931), the Court, through Mr. Justice Sutherland, held:

"The privilege of the native-born conscientious objector to avoid bearing arms comes, not from the Constitution, but from the acts of Congress. That body may grant or withhold the exemption as in its wisdom it sees fit; and, if it be withheld, the native-born conscientious objector cannot successfully assert the privilege. No other conclusion is compatible with the well-nigh limitless extent of the war powers as above illustrated, which include, by necessary implication, the power, in

the last extremity, to compel the armed service of any citizen in the land, without regard to his objections or his views in respect of the justice or morality of the particular war or of war in general."

■ A fortiori, there is no constitutional right to exemption from compulsory civilian duty in lieu of military service, for, as the Seventh Circuit has said, "Since it cannot be successfully argued that Congress lacks power to require military service of all, it has the lesser power to require of registrants who invoke the privilege of exemption by claiming a I-O classification, civilian work calculated to strengthen the nation in time of emergency." United States v. Hoepker, 1955, 223 F.2d 921, 923. See also Elizarraraz v. United States, supra, 400 F.2d at 902.

Affirmed.

GODBOLD, Circuit Judge (specially concurring):

I concur in the result. But I find it necessary to state my own reasons for agreeing with the conclusion that, under the circumstances of this case, the civilian work order to Crouch did not violate the First Amendment.

The conclusion that the disobeyed order was valid disposes of the case. Nothing more need be said. Nevertheless, in a dictum the broad language of which is easily subject to misunderstanding, the majority discuss the effect of appellant's statement, made before the order was issued, that he would refuse any civilian work. This requires that I state my understanding of what the court holds.

1. The First Amendment Issue

Crouch attacks the validity of his civilian work order under both the Establishment Clause and the Free Exercise Clause of the First Amendment.[1] While I agree with the conclusion that the order was valid, it is necessary to distinguish between Crouch's separate

---

I. "Congress shall make no law respecting an establishment of religion, or prohibit-

ing the free exercise thereof * * *." U.S.Const. amend. I.

claims under the two religion clauses, for the difference between an Establishment Clause claim and a Free Exercise Clause claim may have an important bearing on the validity of a civilian work order issued by Selective Service pursuant to 50 App. U.S.C.A. § 456(j) (1968).[2]

The Establishment Clause, which primarily serves to restrict governmental involvement with religion, delimits the institutions in which Selective Service registrants may be ordered to work and the type of work they may be ordered to perform. The standard for judging an Establishment Clause claim was stated in Abbington School District v. Schempp, 374 U.S. 203, 222, 83 S.Ct. 1560, 1571, 10 L.Ed.2d 844, 858 (1963): "[T]o withstand the strictures of the Establishment Clause there must be a secular legislative purpose and a primary effect that neither advances nor inhibits religion."

In the present case the Board's order to perform work in the Baptist Hospital passes muster under the *Abbington* Establishment Clause test. The institutional character and operations of the Hospital amply indicate that the work Crouch was ordered to perform would not have an impermissible religious effect. Cf. Bradfield v. Roberts, 175 U.S. 291, 20 S.Ct. 121, 44 L.Ed. 168 (1899). The record contains no evidence that there was a purpose of advancing or inhibiting religion in assigning Crouch to the Hospital.

The Free Exercise Clause forbids certain governmental impingements on an individual's religious beliefs or religiously motivated practices. See Sherbert v. Verner, 374 U.S. 398, 402–403, 83 S.Ct. 1790, 10 L.Ed.2d 965, 969–970 (1963); Abbington School District v. Schempp, supra, 374 U.S. at 222–223, 83 S.Ct. 1560, 10 L.Ed.2d at 858.[3] In analyzing the validity under the Free Exercise Clause of a Selective Service civilian work order, the work which the registrant is to perform and the institution to which he is ordered to report are not necessarily dispositive. Rather, they are factors to be weighed along with the nature of the registrant's religious beliefs, the governmental interests at stake in having the registrant perform that work, and the alternative work assignments for that registrant which are practicably available to the government. See Sherbert v. Verner, *supra,* 374 U.S. at 403–408, 83 S.Ct. 1790, 10 L.Ed.2d at 970–973.[4]

In the present case Crouch's Free Exercise Clause claim fails at the threshold, because he does not contend that working at the Baptist Hospital would be contrary to his religious beliefs or would otherwise offend his religious sen-

---

2. The Supreme Court has stated that the two religion clauses of the First Amendment "forbid two quite different kinds of governmental encroachment upon religious freedom." Engel v. Vitale, 370 U.S. 421, 430, 82 S.Ct. 1261, 1267, 8 L.Ed.2d 601, 607 (1962). *See also* Abbington School District v. Schempp, 374 U.S. 203, 222–223, 83 S.Ct. 1560, 10 L. Ed.2d 844, 858 (1963).

3. As to the difficulty in defining "religious" belief, *see* United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed. 2d 733 (1965).

4. In *Sherbert* the Court declared invalid the application to a Seventh Day Adventist of a state unemployment compensation act's requirement that a claimant be willing to work on Saturday. The Court stated that since the Adventist's complying with the requirement would necessitate a substantial infringement on her religiously dictated actions, the burden was on the state to demonstrate that "no alternative forms of regulation" were available to achieve the state's objectives in requiring Saturday work.

*See also* In re Jenison, 375 U.S. 14, 84 S.Ct. 63, 11 L.Ed.2d 39 (per curiam) *vacating* 265 Minn. 96, 120 N.W.2d 515 (1963) (religiously motivated refusal to serve on jury may not be punished by contempt); Murdock v. Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943) (taxation of religious colporteurs struck down). *Compare* Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1943) (free exercise no defense to prosecution under child labor laws); Reynolds v. United States, 98 U.S. 145, 25 L.Ed. 244 (1879) (religiously dictated practice of polygamy may be proscribed).

sibilities. He argues instead that an order requiring *any* individual to work at an institution wholly owned and controlled by members of a different religious denomination is "illegal per se." Rights under the Free Exercise clause are personal and particularized, *cf.* United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), and unless Crouch's own religious beliefs or practices are affected he has no basis for attacking the work order under the Free Exercise Clause.

Whether an order to work at a religiously affiliated institution impinges on the individual's religious beliefs or practices will depend on the facts of the particular case.[5] If the individual's religious sensibilities are significantly affected, the Free Exercise Clause places an obligation on the government to show that "no alternatives" are practicably open other than the assignment to the particular institution. Sherbert v. Verner, *supra*.

### 2. The Refusal to Perform Civilian Work

It is with difficulty that I seek to divine exactly what the majority mean in their discussion of the effect of appellant's statement that he would not perform any civilian work.

I am confident that my brothers do not mean that a registrant, by anything he does or says before the board, can breathe life into an invalid board order, whether the invalidity is rooted in constitutional or statutory grounds.

I am confident they do not mean that a registrant may, by saying he will not accept civilian work, waive his right to attack an order on constitutional grounds, absent the standards of knowledgeable waiver, *e. g.* Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). A Baptist ordered to work as a cantor in a Jewish synagogue, if he raises a First Amendment defense at trial, cannot be convicted on the ground that he told the board he wouldn't work anywhere. The principle is the same for statutory grounds which go to the validity of the order. 50 App. U.S.C.A. § 462(a) (1968) makes punishable a failure to comply with a valid order of the board, and an invalid order cannot be validated by a registrant's announcement of his intentions.[6]

There is not yet a doctrine of anticipatory breach of the criminal law, dispensing with the necessity of issuing valid orders—civilian work orders and induction orders as well.[7] Nor is there any principle which necessarily limits a registrant's trial defenses, going to the validity of the order, to only matters pointed out to the board.

The Ninth Circuit cases quoted by the majority are concerned with pre-order administrative matters not going to the validity of the work orders. In Yaich v. United States, 283 F.2d 613 (1960) the appellant was convicted for refusing to obey a civilian work order to report to the Los Angeles County Department of Charities, an institution approved as suitable by Selective Service and previously judicially determined to be suitable.

---

5. As to an individual's potential religious reactions to being ordered to work at an institution controlled by a different faith, *see* Mr. Justice Black's dissent in Board of Educ. of Central School Dist. No. 1 v. Allen, 392 U.S. 236, 251, 88 S.Ct. 1923, 1930, 20 L.Ed.2d 1060, 1070 (1968), pointing out that we are "a citizenship composed of people of myriad religious faiths, some of them bitterly hostile to and completely intolerant of the others."

6. It has long been settled that the substantive invalidity of the order to report may be raised as a defense in a prosecution under 50 App. U.S.C.A. § 462(a) for refusing to submit to induction. *E. g.*, Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); United States v. Hartman, 209 F.2d 366 (2d Cir. 1954).

7. To imply otherwise is as indefensible practically as it is legally. The conscientious objector who has received his work order may report as directed, and the inductee may take the important step forward, despite any number of advance pronouncements of "I won't go."

283 F.2d at 619. Appellant claimed as a defense that at the administrative level, when the board, as required by 32 C.F.R. 1660.20(b), submitted three proposed types of civilian work, two were private charities and therefore not sanctioned by the regulations. The third was the place to which the defendant ultimately was ordered. The court found all three institutions complied with the regulations, and, in the dictum quoted by my brothers, said that in any event the defendant having categorically refused civilian work, had not been prejudiced.[8]

In Langhorne v. United States, 394 F.2d 129 (9 Cir. 1968) the appellant took the position at administrative hearing and at the trial that he would not perform any work in lieu of military service. On appeal he raised for the first time the objection that the work to which he was assigned was not "appropriate." The court found there was no infringement of his religious freedom, and assumed that his objection of "inappropriateness" meant not appropriate to him personally. 394 F.2d at 130 and n.3. Thus his objection did not reach constitutional dimensions nor did it concern a failure of the institution to meet standards of the statute or of the regulations. Obviously the registrant could not "conjure up objections" on appeal (or at trial either, for that matter) that his place of assignment was just not the right place for him. As the court pointed out, at the administrative level he had the opportunity to object to places suggested by the board and to make suggestions of his own.

Thus neither *Yaich* nor *Langhorne* is of any broader scope than the cases referred to in footnote 8, *supra*. As I understand what they say, my colleagues do not attempt to extend *Yaich*

and *Langhorne* beyond the very narrow scope of their particular facts.

In McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), *reversing* 395 F.2d 906 (6th Cir. 1968), the registrant wrote his board that "I refuse to serve this country armed, and I refuse to serve it unarmed by doing alternative service." 395 F.2d at 907. Later he stated, "I simply no longer want to have anything to do with the Selective Service System." *Id.* He not only tried but perhaps even wanted to violate the Act. 395 F.2d at 910 (dissenting opinion). Nevertheless, the Supreme Court considered his challenge to the validity of his draft classification as a defense to the prosecution for refusing to obey an order to report, concluded that his classification was incorrect and therefore the order to report was invalid, and reversed and remanded for the entry of a judgment of acquittal.

---

8. Of course, technical defects not bearing on the substantive validity of an order and not prejudicing the registrant may not be proper defenses to a prosecution for failing to report. *See, e. g.,* Jessen v. United States, 242 F.2d 213 (10th Cir. 1957) (improper residence of board member); Kent v. United States, 207 F.2d 234 (9th Cir. 1953) (signature on order to report improperly placed); United States v. Fratrick, 140 F.2d 5 (7th Cir. 1944) (omission of phrase from order); United States v. Walden, 56 F.Supp. 777 (N.D.Ga.1944) (failure of board to keep proper entries in minutes).