**UNITED STATES of America,
Plaintiff,**

**v.**

**Earl THORN, Defendant.**

**Crim. No. 32099.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

Sept. 14, 1970.

Robert Livingston, Asst. U. S. Atty., New Orleans, La., for plaintiff.

James Keenan, New Orleans Legal Assistance Corp., New Orleans, La., for defendant.

CASSIBRY, District Judge:

The defendant, Earl Thorn, has been indicted under the Selective Service Act, 50 U.S.C. App. § 462, for failure to report for civilian work in lieu of induction into the armed forces. Defendant has filed a motion to dismiss the indictment alleging the unconstitutionality of the provisions of the Act with whose violation he is charged.

Specifically, defendant makes the following contentions in support of his motion to dismiss: (1) That portion of the Selective Service Act requiring alternate civilian work in lieu of military induction, 50 U.S.C. App. § 456(j), is unconstitutional because it calls for a labor draft for performance of services not related to the national defense, in violation of the Thirteenth Amendment's prohibition against involuntary servitude; (2) Exaction of compulsory civilian labor from a conscientious objector violates the free exercise clause of the First Amendment; (3) Assuming that conscientious objector status is granted by the mere grace of Congress, the due process clause of the Fifth Amendment requires that there be some reasonable relationship between alternative service and a legitimate legislative object. Once Congress has granted such status, it cannot impose unconstitutional conditions thereon; (4) The alternative civilian work provision of the Act is unconstitutional as applied and administered because it is being used to allocate national manpower in the civilian realm and not merely to raise an army; and also because assignment to Goodwill Industries is not in the "national interest" as related to the War Powers Clause (Art. 1, Sec. 8 of the U. S. Constitution); (5) The provision of the Act providing for ministerial exemptions, 50 U.S.C. App. § 456(g), violates the First Amendment's establishment and free exercise of religion clauses.

I.

 I begin with the premise that there is no constitutional right to exemption from military service. Congress could eliminate all such exemptions if it so desired. United States v. Crouch, 415 F.2d 425, 430 (5th Cir. 1969); Elizarraraz v. United States, 400 F.2d 898, 902 (5th Cir. 1968); Wood v. United States, 373 F.2d 894, 900 (5th Cir. 1967), rev'd on other grounds, 389 U.S. 20, 88 S.Ct. 3, 19 L.Ed.2d 20 (1967).[1] It follows, I believe, that Con-

1. This notion is similarly well-established in other Circuits; see, e. g., United States v. Boardman, 419 F.2d 110, 112 (1st Cir. 1969); Pomorski v. United States, 222 F.2d 106, 107 (6th Cir. 1955); United States v. Fallon, 407 F.2d 621,

gress has the corresponding power to grant exemptions subject to reasonable conditions. In the case of those persons conscientiously opposed to all military service (both combat and non-combat), Congress has seen fit to require that they perform alternative civilian duty in lieu of military service. This is clearly within the purview of Congress. In United States v. Crouch, *supra*, 415 F.2d at 430, the Fifth Circuit stated that

"There is no constitutional right to exemption from military service because of religious belief. This right comes from Congress. [Citation omitted]

\* \* \* \* \* \*

"*A fortiori*, there is no constitutional right to exemption from compulsory civilian duty in lieu of military service, for, as the Seventh Circuit has said, 'Since it cannot be successfully argued that Congress lacks power to require military service of all, it has the lesser power to require of registrants who invoke the privilege of exemption by claiming a I-O classification, civilian work calculated to strengthen the nation in time of emergency.' United States v. Hoepker, [7 Cir.], 1955, 223 F.2d 921, 923. See also Elizarraraz v. United States, supra, 400 F.2d at 902."

With this premise in mind, I now consider each of the defendant's contentions.

## II.

■ Defendant's attack of the alternate civilian work provision of the Se-

622 (7th Cir. 1969); Loewing v. United States, 392 F.2d 218, 219 (10th Cir. 1968). Also see Jacobson v. Massachusetts, 197 U.S. 11, 29, 25 S.Ct. 358, 49 L.Ed. 643 (1905); United States v. Macintosh, 283 U.S. 605, 623, 51 S.Ct. 570, 75 L.Ed. 1302 (1931), and Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), concurring opinion of Mr. Justice Harlan: "\* \* \* Congress, of course, could, entirely consistently with the requirements of the Constitution, eliminate *all* such exemptions for conscientious objectors."

lective Service Act as violative of the Thirteenth Amendment is not novel. Practically every Circuit has considered this problem and, without exception, the civilian work provision has been held to be constitutional. Most recently, the Seventh Circuit rejected such a contention with this comment:

"In Badger v. United States, 322 F. 2d 902 (9 Cir., 1963), cert. den. 376 U.S. 914, [84 S.Ct. 669, 11 L.Ed.2d 610] (1964), a Jehovah Witness had been classified 1-O. He argued that compulsory civilian duty in peacetime violates the prohibition of involuntary servitude in the Thirteenth Amendment. In rejecting the defendant's argument, the Court quoted from its earlier decision in Howze v. United States, 272 F.2d 146, 148 (9 Cir., 1959)—'The appellant also argues that the Thirteenth Amendment to the Constitution prohibits a civilian labor draft in peacetime, absent a national emergency. He mis-states the case. Compulsory civilian labor does not stand alone, but it is the alternative to compulsory military service. It is not a punishment, but is instead a means for preserving discipline and morale in the armed forces. The power of Congress to raise armies and to take effective measures to preserve their efficiency, is not limited by either the Thirteenth Amendment or the absence of a military emergency.'" United States v. Holmes, 387 F.2d 781, 784 (7th Cir. 1968) cert. denied, 391 U.S. 936, 88 S.Ct. 1835, 20 L.Ed.2d 856.

But see United States v. Sisson, 297 F.Supp. 902 (D.Mass.1969), which held that a person conscientiously opposed to the Vietnam war (not technically a conscientious objector in the narrow statutory sense) *could not constitutionally be* required to render *combat* service in Vietnam. A direct appeal to the United States Supreme Court was dismissed for lack of jurisdiction, 399 U.S. 267, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970). See note 10, *infra.*

Our own Fifth Circuit reached a similar conclusion in Heflin v. Sanford, 142 F.2d 798, 799, 800 (1944):

"The answer to appellant's complaint lies in the broad principle that the Thirteenth Amendment has no application to a call for service made by one's government according to law to meet a public need, just as a call for money in such a case is taxation and not confiscation of property. * * *

"There can be no doubt whatever that Congress has the constitutional power to require appellant, an able-bodied man, to serve in the army, or in lieu of such service to perform other work of national importance. The Thirteenth Amendment abolished slavery and involuntary servitude, except as a punishment for crime, but was never intended to limit the war powers of government or its right to exact by law public service from all to meet the public need." [2]

■ That civilian work in lieu of induction does not constitute involuntary servitude as proscribed by the Thirteenth Amendment thus seems beyond question. However, defendant makes an argument which bears mention. World War II cases [3] are the the primary authority in this area of the law. The courts were cognizant of the "total war" [4] in which this country was then involved; therefore the *circumstances* required that Congress exercise its "war powers * * * to meet the public need." [5] Of course there are many post-war cases which have upheld alternate civilian duty in peacetime. But by and large these cases either rely upon the wartime cases as authority without considering the difference in circumstances or uphold alternate civilian duty on the theory that Congress could lawfully require such service to preserve the "morale and discipline" of the troops. [6] Defendant argues that the first proposition cannot serve as authority for a civilian labor draft in 1970 and that the second is based upon a factual assumption which is unsupported by evidence. [7] Congress undoubtedly has power to provide for the national defense during times of war by requiring military service of all who are able-bodied. "Certainly national defense and preparedness is accomplished by more than the strength of arms alone," United States v. Niles, 122 F.Supp. 382, 384 (N.D.Calif.1954), aff'd at 220 F.2d 278, and the "strength and vitality of a nation is measured by criteria broader than a numerical count of its men-at-arms." United States v. Hoepker, 223 F.2d 921, 923 (7th Cir. 1955). I think Congress clearly has the correlative power to provide for the national welfare and preparedness during peacetime, Howze v. United States, 272 F.2d 146, 148 (9th Cir. 1959); a proper exercise of this power is found in the provision of the Selective Service Act providing for "civilian work contributing to the maintenance of the national health, safety or interest" in lieu of induction into the armed forces, 50 U.S.C. App. § 456(j). The present absence of a military emergency or "total war" does not obviate the ever-present need for military preparedness.

Moreover, I find it unnecessary to divine a particular Congressional purpose behind the alternate civilian work provi-

2. Accord: Pomorski v. United States, supra note 1; United States v. Niles, 122 F.Supp. 382, 384 (N.D.Calif.1954), aff'd at 220 F.2d 278 (9th Cir. 1955); United States v. Sutter, 127 F.Supp. 109, 117 (S.D.Calif.1954).

3. E. g., Heflin v. Sanford, 142 F.2d 798 (5th Cir. 1944).

4. Id. 142 F.2d at 800.

5. Id.

6. See Howze v. United States, 272 F.2d 146, 148 (9th Cir. 1959); United States v. Boardman, supra, note 1, 419 F.2d at 112; Brooks v. United States, 147 F.2d 134 (2d Cir. 1945).

7. Defendant alternatively seeks an evidentiary hearing to determine whether there is any basis in fact for the assumption that alternate civilian duty by conscientious objectors serves to preserve the morale and discipline of the troops.

sion. Some courts have stated that such work is justified because it promotes morale and discipline among those serving in the military.[8] This seems to be a reasonable assumption. "The influence of conscientious objectors against the use of military force in defense of the principles of our government is apt to be more detrimental than their mere refusal to bear arms." United States v. Schwimmer, 279 U.S. 644, 651, 49 S.Ct. 448, 450, 73 L.Ed. 889 (1929). Still there are many other legitimate Congressional purposes which might also be assigned. See, e. g., United States v. Boardman, 419 F.2d 110, 112 (1st Cir. 1969).

### III.

[5] Defendant's First Amendment argument must also be rejected. Thorn contends that because he is a conscientious objector, compulsory civilian duty infringes upon his right of free exercise of religion. This contention has been met and rejected on several occasions.[9]

I am constrained to recognize the broad power of Congress to conscript for military service without regard to religious scruples.[10] In Jacobson v. Massachusetts, 197 U.S. 11, 29, 25 S.Ct. 358, 362, 49 L.Ed. 643 (1905), the Supreme Court speaking through Mr. Justice Harlan, expressed its view that

" * * * The liberty secured by the 14th Amendment, this court has said, consists, in part, in the right of a person 'to live and work where he will' (Allgeyer v. Louisiana, 165 U.S. 578, 17 S.Ct. 427, 41 L.Ed. 832); and yet he may be compelled, by force if need be, against his will and without regard to his personal wishes or his pecuniary interests, or even his religious or political convictions, to take his place in the ranks of the army of his country, and risk the chance of being shot down in its defense." [11]

Moreover, this case presents no occasion to go that far, "for even if we assume that the First Amendment requires some form of exemption for those

---

8. See note 6, supra.

9. See Loewing v. United States, 392 F.2d 218, 219 (10th Cir. 1968); United States v. Boardman, supra, note 1, 419 F.2d at 112, 113; United States v. Fallon, supra, note 1, 407 F.2d at 622.

 In Elizarraraz v. United States, 400 F.2d 898, 906 (5th Cir. 1968), Judge Godbold, dissenting, agreed with the majority that "There is no constitutional right to exemption from military service or to status as conscientious objector. The United States may *order* the citizen to military service. or to the statutory substitute of acceptable civilian employment in lieu thereof, without violation of First Amendment rights. * * * The conscientious objector can be required to obey notwithstanding his religious principles."

10. But see United States v. Sisson, supra, note 1, where a Federal District Court in Massachusetts held that the First Amendment prevented conscription of the defendant for combat duty in Vietnam. But even *Sisson* recognized that "it does not follow from a judicial decision that Sisson cannot be conscripted to kill in Vietnam that he cannot be conscripted for non-combat service there or else-

where." 297 F.Supp. at 910. The court then went on to say:
 "It would be a poor court indeed that could not discern the small constitutional magnitude of the interest that a person has in avoiding all helpful service whatsoever or in avoiding paying all general taxes whatsoever. His objections, of course, may be sincere. But some sincere objections have greater constitutional magnitude than others.
 "There are many tasks, technologically or economically related to the prosecution of a war, to which a religious or conscientious objector might be constitutionally assigned. As Justice Cardozo wrote 'Never in our history has the notion been accepted, or even, it is believed, advanced, that acts thus indirectly related to service in the camp or field are so tied to the practice of religion as to be exempt, in law or morals, from regulation by the state.' Hamilton v. Regents of University of California, 293 U.S. 245, 267, 55 S.Ct. 197, 206, 79 L.Ed. 343 (1934)."

11. See also, United States v. Macintosh, supra, note 1; Welsh v. United States, supra, note 1, concurring opinion of Mr. Justice Harlan.

conscientiously opposed to military service, it does not follow that Congress must grant a total exemption." United States v. Boardman, *supra,* 419 F.2d at 112. In *Boardman,* the First Circuit stated:

> "The constitution does not extend the same degree of protection to every manifestation of religious impulse. The strict standard which defendant invokes may be appropriate when the government seeks to regulate acts of worship, or to compel conduct which violates a cardinal tenet of religious faith. [See, e. g., United States v. Sisson, 297 F.Supp. 902 (D.Mass. 1969), (combat duty in Vietnam); Sherbert v. Verner, 374 U.S. 398, [83 S.Ct. 1790, 10 L.Ed.2d 965] (1963), (denial of unemployment benefits to Sabbatarians); In re Jenison [contempt proceedings], [267 Minn. 136], 125 N.W.2d 588 (Minn.1963), (compulsory jury duty).] In this case, however, defendant has been ordered to work in a hospital, an employment in which he has already engaged without violence to his principles. *Defendant objects not to the specific conduct which the government requires, but to cooperation with a system which he considers wicked."* (Emphasis added.) 419 F.2d at 112, 113.

## IV.

■■ I quite agree with defendant's proposition that, although Congress might eliminate all exemptions from military duty, once it has granted such exemptions the due process clause of the Fifth Amendment requires that any conditions imposed thereon be both rational and reasonable. See Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), concurring opinion of Mr. Justice Harlan. A reasonable relationship does exist between the civilian work provision and the Congressional purpose of providing for the defense and welfare of our nation. See Part II, *supra,* of this opinion.

■ Furthermore, I find no denial of substantive due process or equal protection in the civilian work provision. Equal protection, as implied in the due process clause of the Fifth Amendment, "requires only that all legislative classifications have a reasonable basis and that everyone placed within a classification be treated similarly." United States v. Holmes, *supra,* 387 F.2d at 785; cf. United States v. Fallon, 407 F.2d 621, 623 (7th Cir. 1969).

## V.

■ Defendant's remaining contentions may be answered briefly. He complains that the civilian work program is being unconstitutionally used by Congress to "channel" civilian manpower and not simply to raise an army. While this may in some cases be a by-product of the civilian work program, its primary purpose is to aid the nation's health, welfare and defense. This is a valid exercise of Congressional power.

■ Defendant also questions his assignment to Goodwill Industries as not being in the "national interest". This contention is without merit; such work obviously contributes to the national welfare. See Yaich v. United States, 283 F.2d 613 (9th Cir. 1960).

■ Finally, defendant alleges in his motion to dismiss that 50 U.S.C. App. § 456(g), providing for ministerial exemptions from training and service, violates the establishment and free exercise of religion clauses of the First Amendment insofar as it exempts only "regular or duly ordained ministers of religion." While defendant has failed to brief this point, "[t]he ministerial exemption comes from the Congress, not the Constitution." Wood v. United States, *supra,* 373 F.2d at 900. "Absent a constitutional right to exemption, the [defendant] has no constitutional grounds for challenging the conditional exemption which requires him to do civilian work." Loewing v. United States, 392 F.2d 218, 219 (10th Cir., 1968).

\* \* \*

For the foregoing reasons, it is ordered that the motion to dismiss the indictment be, and the same is hereby, denied. It is so ordered.