**UNITED STATES of America,
Appellee,**

v.

**David Eugene BERRIER, Appellant.
No. 14400.**

United States Court of Appeals,
Fourth Circuit.

Argued Sept. 14, 1970.

Decided Nov. 25, 1970.

Certiorari Denied March 8, 1971.

See 91 S.Ct. 985.

Charles H. McGirt, Lexington, N.C. (Walser, Brinkley, Walser & McGirt, Lexington, N.C. on brief) for appellant.

William L. Osteen, U. S. Atty., and Bradley J. Cameron, Asst. U. S. Atty., for appellee.

Before BOREMAN, BRYAN and CRAVEN, Circuit Judges.

BOREMAN, Circuit Judge:

David Eugene Berrier appeals from his conviction in the district court without a jury for knowingly failing and neglecting to report for civilian employment to which he had been assigned by his local Selective Service board in lieu of induction into military service.

After being classified I–O (conscientious objector opposed to combat and noncombat service), Berrier on three separate occasions was given an opportunity by his local board to select the type of civilian work which he wished to perform. Included among the choices offered Berrier were maintenance work, institutional work or hospital work. He was informed that appropriate civilian employment was available at Moses H. Cone Memorial Hospital in Greensboro, Wesley Nursing Center in Charlotte, and two North Carolina State Hospitals. However, in all instances, Berrier insisted that he would not accept any civilian work of any kind which he might be ordered to perform.

The local board decided that institutional work would be appropriate and was advised that such work was available at the "Methodist Home" in Charlotte. The local board requested approval of Berrier's assignment to this institution from the Director of Selective Service, and such approval was given. The local board ordered Berrier to report to the Methodist Home for civilian work in lieu of induction into military service, but Berrier refused to report. He was afforded another chance by being reordered to report to the Methodist Home but he again refused. His indictment and conviction followed. We affirm.

Upon appeal, Berrier alleges that the local board's order to report to the Methodist Home was not authorized by the Selective Service Act or Presidential regulations; further that the order to report was invalid as constituting involuntary servitude in violation of the Thirteenth Amendment and as an infringement upon his religious freedom as guaranteed by the Establishment Clause and Free Exercise Clause of the First Amendment. His First Amendment claim is based upon his allegation that working at the Methodist Home would be aiding another religious denomination, which would contravene the belief of his faith (Jehovah's Witness) that aiding any other religious denomination is to worship a false God.

I

Berrier's allegation that his assignment to work at the Methodist Home was improper is premised upon his claim that the Methodist Home does not qualify as coming within the types of institutions authorized by the Selective Service Act or Presidential regulations.

32 C.F.R. § 1660.1 defines appropriate civilian work as follows:

"(a) The types of employment which may be considered * * * to be civilian work *contributing to the maintenance of the national health, safety, or interest,* and appropriate to be performed in lieu of induction into the armed forces by registrants who have been classified in Class I–O shall be limited to the following:

\* \* \* \* \* \*

"(2) *Employment by a nonprofit organization, association or corporation which is primarily engaged either in a charitable activity conducted for the benefit of the general public or in carrying out a program for the improvement of the public health or welfare,* including educational and scientific activities in support thereof, when such activity or program is not principally for the benefit of the members of such organization, association, or corporation, or for increas-

ing the membership thereof." (Emphasis added.)

The evidence established that the Methodist Home was a nonprofit organization having as its primary purpose and objective the care of the aged. Though preference for admission was accorded Western North Carolina members of the Methodist faith, the Home accepted aged persons of various denominations and non-Methodist employees outnumbered Methodists. The Methodist Home clearly comes within the holding in United States v. Hoepker, 223 F.2d 921, 922 (7 Cir.1955):

> "Congress has declared that maintenance of the mental and physical health of our population is a subject of vital federal concern in times of emergency. And Section 6(j), which contains this declaration of policy, defines appropriate employment *in terms of the nature of the work to be done, without reference to the control of the institutions to which conscientious objectors may be assigned. The protection of the public health is no less work of national importance whether it is done in an institution controlled by federal or by state authorities or by a private charitable corporation.*" (Emphasis added.) *See* United States v. Crouch, 415 F.2d 425 (5 Cir.1969).

█ Since care for the aged obviously contributes to the maintenance of the national public health, interest and welfare and since the Methodist Home provides care for the aged of various denominations, we reject Berrier's claim that the Home is not an appropriate institution in which he should be required to perform civilian work in lieu of induction.

## II

█ Berrier's constitutional attack upon his work assignment closely parallels that considered by the court in United States v. Crouch, 415 F.2d 425, *supra,* wherein a Jehovah's Witness assigned to work at the Southern Baptist Hospital of New Orleans claimed that such assignment was in violation of the First Amendment guarantee of his religious freedom because it attempted to force him to aid another religious group which was directly contrary to the religious teachings and beliefs of Jehovah's Witnesses. The evidence in that case established that the hospital was owned and controlled by Baptist churches and that the hospital was a nonprofit institution engaged in the charitable activity of caring for the sick and afflicted. There was no evidence that patients or employees must be Baptists, that the Baptist religion was practiced in the hospital or that the Baptist faith was imposed upon either the patients or employees. In construing 32 C.F.R. § 1660.1(a) (2), the court held that the showing of ownership and control of the hospital by the Baptist Convention was insufficient to establish that the work performed by the hospital was of a religious nature and, therefore, the fact that the hospital was operated by a denomination of a faith different from that of the registrant did not constitute an invalid restraint on his free exercise of religion.

As in *Crouch, supra,* the evidence in the instant case showed that the Methodist Home accepts members of other denominations as patients and that employees are not restricted to the Methodist faith. As in *Crouch,* there is no evidence whatsoever that the Methodist faith is practiced at the hospital or in any manner imposed upon patients or employees of the Home. Thus, Berrier's claim that his First Amendment religious freedom rights would be violated by his assignment to work at the Methodist Home must fail.

## III

█ Berrier's claim that his assignment constituted involuntary servitude

is totally devoid of merit. Many cases have upheld the validity of our draft laws against similar challenges of involuntary servitude. Selective Draft Law Cases, 245 U.S. 366, 38 S.Ct. 159, 62 L. Ed. 349 (1918); United States v. Chandler, 403 F.2d 531 (4 Cir.1968). In United States v. Hoepker, 223 F.2d 921, 923, *supra,* the court rejected a similar claim made by a conscientious objector.

Our consideration and discussion of Berrier's claims may be wholly unnecessary in view of his consistent assertions to his local board that he would not do any type civilian work. His repeated declarations negate his good faith in challenging the validity of his specific assignment to civilian work in lieu of induction. As the court said in Daniels v. United States, 404 F.2d 1049, 1051 (9 Cir.1968):

> " * * * a conscientious objector may not deny his local board's right to require him to perform any civilian work whatever, refuse to make any choice as to willingness to perform among the several kinds of work so offered him, and then, on his prosecution for failing to report to perform the particular work designated by the board, undertake to set up the defense that he regards the work as not being appropriate. On his unwillingness to engage in any such discussion before the board when he was afforded the opportunity to do so, and with his continued adherence to an unwillingness to perform any work designated by the board in lieu of military service the question of the appropriateness of the particular work assigned to him would be a matter of no significance on his trial as related to his intent to violate the Act in refusing to obey the board's order." *Accord,* United States v. Crouch, 415 F.2d 425, *supra*; Langhorne v. United States, 394 F.2d 129 (9 Cir.1968).

Affirmed.