**Fred LAWTON, Petitioner,**

v.

**Curtis W. TARR, et al., Respondents.**

**Civ. No. 878.**

United States District Court, E. D. North Carolina, New Bern Division.

May 7, 1971.

Thomas F. Loflin, III, Durham, N. C., and Professor Barry Nakell, Chapel Hill, N. C., for petitioner.

Richard J. Bryan, Asst. U. S. Atty., Raleigh, N. C., for respondents.

## ORDER AND MEMORANDUM OF DECISION

CRAVEN, Circuit Judge.

I confess that I am embarrassed that the United States Attorney has filed a motion asking that I disqualify myself from hearing and deciding the merits of the above-captioned proceeding. If my oath of office includes a vow of silence on matters of public controversy, then I have simply brought it upon myself. But I believe that a federal judge is privileged to address his local Bar Association in observance of Law Day without confining his remarks to platitudes in praise of milk and motherhood with perhaps a flat out condemnation of Hitler.[1] I think that I have not done wrong in expressing publicly my vehement opposition to the continuation of the Vietnam War. My views about it are not new and have never been temperate. At least as long ago as October 20, 1968, my opposition to the Vietnam War was reported in the North Carolina newspapers, and I was quoted as saying the United States should "get out of Vietnam—with or without honor."

I, therefore, think that my attitude toward the war has long been known to the United States Attorneys representing the government in cases arising in the Fourth Circuit. Although I have never kept my attitude on this matter a secret, until now it has not been challenged as disqualifying me from hearing many cases involving the selective service law.[2] I am at a loss to understand why I have been deemed qualified before and incompetent now when my publicly expressed attitude has remained the same and the war is no longer popular as it was when I first spoke against it.

The beginning of intellectual honesty in a judge is the recognition

1. I am in good company. Chief Justice Burger, while in his present high office and when a circuit judge, has frequently addressed Bar Associations and other nonpartisan groups strongly urging change and reform. Public speaking to lawyers and other nonpartisan groups is one of the very, very few off-bench activities that properly remain open to a judge. Since I became a judge I have never made a speech to a meeting or convention of a political party, nor have I even attended such a meeting in more than a decade. For a more complete statement of my view of the very limited permissible off-bench activity of a federal judge, see Hearings on Nonjudicial Activities of Supreme Court Justices and Other Federal Judges, and S. 1097 and S. 2109, Before the Subcommittee on Separation of Powers, 91st Cong., 1st Sess., at 228–231 (1969).

2. Since the motion to recuse is based upon my recent Law Day speech to the Buncombe County Bar Association, I attach as an Appendix to this Order pertinent excerpts from that speech expressing my extreme opposition to the Vietnam War.

that, like other men, he has his own predilections and preferences and intellectual and philosophical attitudes that color and influence his viewpoints. Achieving it requires that he be constantly on guard against his own bias, not in pretending that there can be none. I do not believe that a judge has a duty of loyalty to a political administration with respect to any particular policy of that administration—international or domestic. Nor do I believe that he must pretend to believe that all policies or even all laws are wise and just. But I do believe that he must read, interpret and apply laws as written without regard to whether he would like to see them changed.

I believe that my record as a judge for nearly 15 years, state and federal, will show that I have in the past been able to put.to one side my own personal viewpoint about the wisdom and justification for a given law and apply the law as written despite sometimes a personal reluctance to do so.

In Perkins v. North Carolina, 234 F. Supp. 333 (W.D.N.C.1964), I expressed my contempt for the North Carolina statute making the so-called "crime against nature" punishable by imprisonment up to 60 years. Never in my life have I wanted more to find a statute invalid, and the opinion plainly discloses my wish in that regard; but, nevertheless, I found it impossible under the law to do so, and I held it valid and enforceable.

For more than 20 years I have publicly expressed my disbelief in capital punishment, and for almost 15 years I have, nevertheless, been able to participate in capital cases at both trial and appellate level without the slightest suggestion from any prosecutor that I did so unfairly. I doubt that a month goes by that I do not participate in a decision denying habeas relief to some person on death row in one of the five states within this circuit. In Case v. North Carolina, 315 F.2d 743 (4th Cir. 1963), I dissented from a decision by two of my colleagues granting habeas relief to a prisoner under sentence of death.

Until recently, with Judge Wyzanski, I thought that there might be such a thing as "selective conscientious objection" to the Vietnam War. That contention was foreclosed by Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L. Ed.2d 168 (1971), and this week I prepared and entered an order for the court denying relief in the case of United States v. Fish (No. 15,065, 4th Cir. 1971).

This motion has caused me to look back over the selective service cases in which I have participated as a member of the Fourth Circuit. Time and again I have voted to affirm sentences of imprisonment inflicted upon those who have violated the selective service law by refusal to serve in the armed forces. See, e. g., United States v. Lack (No. 13,344, 4th Cir. April 2, 1971); United States v. Doran, 438 F.2d 535 (4th Cir. 1971); United States v. Taylor, 434 F.2d 652 (4th Cir. 1970); United States v. Berrier, 434 F.2d 572 (4th Cir. 1970); United States v. Jones, 423 F.2d 636 (4th Cir. 1970); United States v. McCullough, 413 F.2d 981 (4th Cir. 1969); United States v. Mason, 408 F.2d 1326 (4th Cir. 1969); and United States v. McNeil, 401 F.2d 527 (4th Cir. 1968).

It is strange that the government has allowed me to sit in cases such as that of *Fish, supra,* directly involving the morality of the Vietnam War to which I am and have been publicly opposed, without attempting to disqualify me and that now the government moves to disqualify me in a case which involves the Vietnam War indirectly, if at all.

It is true that Fred Lawton might be sent to Vietnam, but it does not appear, so far as I know, that he is opposed to going, but simply that he believes himself unlawfully inducted. If I reach the merits and should decide that Lawton is entitled to be released from the Army, I would assume that another draftee would take his place whether in Vietnam

or elsewhere. Since I am not acquainted with Lawton, it is plain that I am indifferent whether he or another should possibly have to go to Vietnam. I should, however, like it if no one had to go. But there is nothing I can do as a judge to accomplish that and very little I can do as a citizen and occasional public speaker.

The question before me is not the constitutionality of the Vietnam War, nor whether Lawton may be required to participate in it, but simply whether Lawton's exposure to the draft may be extended beyond the normal cut-off date of April 1 following the end of a calendar year. It is purely a question of law, so relatively lacking in factual content that I have already decided it unnecessary to hear Lawton's testimony.

The motion to disqualify does not explicitly aver that I am biased against the selective service law. The argument seems to be, however, that since I am opposed to the Vietnam War and since draftees may possibly be sent to participate in that war, then I must be opposed to the selective service law. I have never spoken publicly on this subject, nor do I recall even talking about it privately, but since the government raises the question I think it is entitled to disclosure. The Nixon Administration's proposal to convert to an entirely voluntary army is appealing, and yet I am not sure but what in a democracy the burden of a very large military establishment ought to be borne by all. So long as the nation is committed to the maintenance of enormous armies, I am inclined to think the draft is the best alternative. Unlike my attitude toward the Vietnam War, I, therefore, think I can fairly say that I am not presently opposed to the selective service law. But I would hope that someday the armed forces may be small enough that compulsory service is not needed.

 I do not believe that my strong aversion to the Vietnam War and my belief that it is the most tragic national mistake made in my lifetime will have the slightest effect or influence upon my judgment as to the time of termination of exposure under the selective service law. It is hornbook law that attitude or feeling a judge may entertain toward the subject matter of a case does not disqualify him. 46 Am.Jur.2d Judges § 168 (1969); 48 C.J.S. Judges § 82 (1947). In re Union Leader Corp. 292 F.2d 381, 388 (1 Cir. 1961). The motion to recuse is denied.

But there is an aspect to this case, not mentioned in the motion to recuse, that bothers me considerably without regard to my capacity to adjudge and decide the merits fairly both to the petitioner and to the respondent. It is this aspect of the case that probably accounts for the filing of the motion to recuse.

The petition for writ of habeas corpus in this case was not formally directed to me as a United States Circuit Judge pursuant to 28 U.S.C. § 2241. Instead, the case first came to my attention as an application for relief under Rule 8 which I denied. Having heard the argument on the merits, it seemed to me a waste of judicial time for it to have to be reargued again either in the Eastern District of North Carolina or in the District of South Carolina and that some economy in the administration of justice would be accomplished by my simply proceeding on the merits and entertaining the writ either in my capacity as circuit judge or by assignment as a district judge to hold the courts in the Eastern District of North Carolina,[2] or both.

██ ██ However sensible such a procedure may be, and Chief Judge Butler agreed with me that it made sense, it has one vice: if I now proceed on the merits it may appear to the United States Attorney and his assistant and possibly to others that in a sense I sought the case and am eager for an opportunity to interpret that part of the selective service law at issue. It is not

2. Chief Judge Haynsworth had previously designated me, and I plan to hold a regular civil term during the summer of 1971.

enough to be indifferent on the bench. There must also be an appearance of indifference and impartiality with respect to the particular case for decision. A judge should no more reach out for a case than a lawyer should be allowed to shop for a forum. I have never asked for a case in my life, nor have I ever refused one. Although this one came to me unsolicited under Rule 8, there is a possibility that my conversation with Judge Butler and his assignment of the case to me as a district judge could be interpreted as a reaching out for jurisdiction. Proceeding as a circuit judge under 28 U.S.C. § 2241 might be similarly misinterpreted.

■ Therefore, in my discretion, I have again talked with Chief Judge Butler and have asked him to reassign the case to another judge holding the courts in the Eastern District of North Carolina. He has agreed to do so and has assured me that he will urge expedition so that this turn of events will not delay an early decision on the merits.

As for the jurisdiction which I assumed as a circuit judge under 28 U.S.C. § 2241 by my order dated April 30, 1971, pursuant to that same section I herewith transfer the case to the Eastern District of North Carolina as authorized by the statute.

## APPENDIX A
## EXCERPTS FROM SPEECH TO BUNCOMBE COUNTY BAR ASSOCIATION AND WIVES

1 P.M., Friday, April 30, 1971

There have been several efforts to get the federal courts to declare the Vietnam War unconstitutional. I think the effort is unwise and cannot succeed. Bismark, I believe, said once that war was much too important to be left to generals. I would add it is too important to be left to judges. I opposed the Vietnam War back when it was popular, indeed when it was so popular I could hardly find anyone else who agreed with me. I wrote so many letters in opposition to it to Lyndon Johnson that I often wondered whether he would have promoted me from the district court to the court of appeals if the war file and the judicial appointment file had ever become mixed. Because Nixon did better than Johnson in winding it down, I refrained until a month ago from writing him at all, but I have waited as long as I can. This is a monstrous, muddleheaded, pridefully aggressive, immorally jingoistic crime against humanity. It reminds me of the Salem witch hunts and the Spanish Inquisition, except that it is worse than both. The executioners in Massachusetts and Spain at least had the excuse that they honestly believed they were killing their victims for the sake of their immortal souls. However muddleheaded and wrong that may have been, it is on a higher plane than to kill as a matter of national interest or to protect an economic philosophy that is not even understood by either North or South Vietnamese. I dearly hope that North Carolina and Asheville will never be destroyed for "our sakes", and I think it valid to assume the Vietnamese must feel the same way.

This war is a stench in the world's nostrils, and the aroma is finally reaching us. When the Wall Street Journal and Forbes business magazine finally agree with the college kids, it would seem to me time to quit and quit now. I am not interested in ending the war "honorably". It began in dishonor and must end the same way. Unfortunately one man's honor is simply another man's pride. It seems to me that there is no reason whatsoever for continuing to reign death and destruction over Indochina except national pride, and according to most Christian writers, pride is the deadliest and greatest of all the sins.

I think the war cannot and will not be ended by judges. It is true that the President has no lawful power to declare war and that that can be done only by the Congress under Article I. It is also true that there has never been a declaration of war with North Vietnam and that on its face the war would appear to be unlawful and unconstitutional. But

the Congress cannot escape its responsibility for this cancer on the body politic because it has appropriated money to raise and support armies knowing full well of their intended use in this undeclared war. It can reasonably be argued that the Congress has effectively declared war, although specifically failing to do so in so many words.

But as I said before, war is too important to be left to generals or to judges and must be determined by the people. It is the biggest political question of all. I think the people have had it with this war and that if the President does not stop it soon he will not have a chance later.